ORIGINAL

United State District Court

District of Delaware

Robert W. Hassett 3rd          }

    Petitioner          }

    V.          }          Case No. ⟋ 0 5 - 6 0 9

Richard Kearney, Warden          }

State Prison of Delaware          }

    Respondent



FILED

AUG 17 2005

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

RD scanned

Brief in Support of Petition

For writ of Habeas Corpus


Robert W. Hassett 3rd

S.C.I.

P.O. Box 500

Georgetown, DE 19947

Table of Contents

Table of Contents …………………………………………………………… I

Index of Authorities…………………………………………………………… II

Statement of questions presented……………………………………………… V

Statement of facts……………………………………………………………… VI

Argument…………………………………………………………………….

    1. The Supreme Court abused its discretion when it denied defendant appeal on

    Prosecutor misconduct (A-B). Thereby denying Petitioner Due Process of Law…. 1

    2. Supreme Court abused it's discretion and violated Defendants Constitutional rights to

    effective counsel, when they denied his appeal on ineffective assistance of counsel (A-

    E)……….. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    3.Supreme Court abused it's discretion and committed error on Trial Court error (A-D).

    Thereby denying the petitioners Due process of Law to all defendants…………… 17

    Relief sought……………………………………………………………….. 25

    Appendix.

I

Index of Authorities

Authority                                                                    Page

Agard v. Portundo, 526 U.S. 1016................................................. 22

Article 1 & 7 of DE. Constitution................................................ 5

Avey v. State, 228 A.2d 614...................................................... 23

Bennett v. State, 164 A. 2d 442.................................................. 4

Brokenbrough v. State, 522 A.2d 855............................................. 19

Bumper v. State, 885. ct 1788................................................... 1

Capano v. State, No. 110 and 149................................................ 17

Clayton v. State, 765 A2d 940................................................... 4, 20

Copas v. Commisioner of corrector 662 A.2d 718,727............................. 7, 9, 13

Copper v. Fitzharris 586 F. 2d 1325, (9th cir. 1978) (enbance) cert. Denied 440 U.S. 974

(1979)......................................................................... 16

Crisp v. Duckworth 743 F. 2d 580................................................ 14

Delaware Rules annotated rule 1.1............................................... 6, 23, 11

Delaware Rules annotated rule 1.3............................................... 6, 11, 15, 2

Delaware Annotated Rule 1.4 (A) (B)............................................. 15, 23

Duonnolo v. State 397 A. 2d 126................................................. 9

Ewing v. Williams 596 F. 2d 391................................................ 10, 12

Gary v. Green 788 F. 2d 350.................................................... 6, 9

Gilliam v. State 629 and 685 .................................................. 7, 11, 16

Green v. United States 880 F. 2d 1299, 1305 .................................. 5

Gregory v. State, No 161 (2002)............................................... 23, 24

Index of Authorities Cont.

| Authority | Page |
|---|---|
| Hughes v. State, 437 A. 2d559………………………………… | 4, 19 |
| Johnson v. State 587 A. 2d 444 (1991)……………………… | 4 |
| Johnson v. United States 398 A. 2d 354……………………… | 18, 22 |
| Lord v. Wood 184 F. 3d 1083………………………………… | 11, 12, |
| Mac Donald v. State No 61 (2002) ……………………………… | 18 |
| Miller v. State. 750 A, 2d 230………………………………… | 20, 21 |
| Napue v. State 3 L. Ed 2d 1217,1221………………………… | 2, |
| Neely v. Cabana 754 F. 2d 1173, 1177……………………… | 10, 14 |
| People v. Haskett 30 cal. 3d 341,866………………………… | 4. |
| People v. Pitts 223 Cal.Appser. 606……………………… | 4. |
| Pierce v. U.S. 402 A. 2d 1237 ……………………………… | 18, 22 |
| Saunders v. Clark 602 A. 2d 623……………………………… | 21 |
| Sexton v. State 397 A. 2d 540………………………………… | 4 |
| State v. Beaulieu. 325 A. 2d 263……………………………… | 23 |
| State v. Burke 522 A. 2d 515………………………………… | 1 |
| State v. Magner 732 A. 2d 234, 238 [2], [3,4]……………… | 7 |
| Strickland v. Washington 446 U.S. 668, 104 S. Ct 2052, 2064………………… | 5, 11, 15, 16 |
| Trump v. State 753 A. 2d 963………………………………… | 4, 18, 20 |
| Wainwright v. State 504 A. 2d 1096………………………… | 18, |
| United States v. Brooks 786 F. 2d 638……………………… | 3, |

Index of Authorities Continuation Content

Authority                                                                                          Page

United States v. Cronic 446 U.S. 648, 104 S. Ct 2039…………………………………… 6, 11

United States v. Decoster 487 F. 2d at 1201…………………………………………… 14,

United States v. Essex 734 F. 2d 832……………………………………………………… 3

United States v. Roberts 618 F. 2d 530,533………………………………………… 19

United States v. Young 470 U.S. 1………………………………………………………… 2, 20

U.S. v. Wong 78 F. 3d 73, 81-82…………………………………………………………… 2

U.S. Constitution Amend VI……………………………………………………… 5-14, 16, 23

U.S. Constitution Amendment XIV………………………………… …, …, …… 1-6. 10-13, 16, 23

12 ABA standards for criminal Justice (3-5.8) (B) (3rd cir. 1993)………………………… 19

IV

Statement of Question Presented

1) Whether petitioner was denied due Process and equal protection of the Laws By the

State courts refusal to reverse the convictions for the Prosecutor's misconducts.?

Petitioner responded, "Yes"

2) Whether petitioner was denied due process and denied constitutional right to effective

assistance of counsel at trial, whether State court denied these rights by law in it's denial

of petitioners appeal based off ineffective assistance of counsel.

Petitioner responded, "Yes"

3) Whether petitioner was denied due process and equal protection of the laws by the

State courts refusal to reverse the convictions for the trial court error.

Petitioner responded, "Yes"



Statement of Facts

The appellant was charged with murder in the first degree and possession of a deadly weapon during the commission of a felony. The crime took place on May 14, 2000 at 1163 Brickyard Rd. Seaford, Delaware 19973.

The appellant went to trial on the aforementioned charges on June 11, 2001 in the superior court Sussex County, the Honorable Richard F. Stokes presiding before the jury. The jury found the defendant guilty of murder in the first degree and guilty of possession of a deadly weapon during the commission of a felony.

The murder in the first - degree was under Title 11, section 636 and the verdict was returned on June 21, 2001. The possession of a deadly weapon during the commission of a felony was under Title 11, section 1447 and the verdict was returned on June 21, 2001. The appellant was sentenced on August 10, 2001, under 11 Del. C. 4209 and 11 Del. C. 4205 (B) (2), to a period of Natural life plus 20 years mandatory incarceration.

The appellants counsel Thomas D. Barnett, filed a direct appeal to the Supreme Court 420,2001. The direct appeal was decided on May 15, 2002. The convictions were affirmed.

The appellant then filed in the Superior court a, rule 61 post - conviction motion with Brief in support. The motion was denied on August 25, 2003.

The appellant then filed a post-conviction relief appeal, to the Supreme Court, Nov. 2003. The Supreme Court recognized that appellant's counsel was some degree ineffective. To gain more information, the case was remanded to the Superior Court for an evidentiary hearing held on October 8, 2004. The Superior Court upheld their denial. The Supreme Court denied appellants motion in full on June 24, 2005, case No 468,2003.

Argument I

Petitioner asserts that the Supreme Court abused it's discretion, thereby committing error in it's denial of petitioners appeal on Prosecutor misconduct: A) Prosecutor illicited false testimony from witness by the act of intimidation and by coercion. B) The prosecution committed prosecutorial misconduct in their closing arguments, by commenting on the defendant's state of mind, i.e. calling him a liar. In turn violating the petitioner's 14th amendment right to fair and just due process.

A) The Supreme Court abused it's discretion in denying petitioners appeal on prosecutorial misconduct. It is asserted by the defendant that the prosecution intentionally illicited and coerced testimony from a witness. (See: Affidavit from Jason Coggin; Ex-A-1) State v. Burke 522 A. 2d 515. Bumper v. State 88. S.C.T. 1788. U.S. v. Aiello 814 F. 2d 109.

The said witness "Jason Coggin" stated while he was on the stand that the defendant, "said he committed the crime. (See: T.T. Coggin Direct, Vol. B. Pg. 163-164; ex-A-2) This statement is very prejudicial, considering that the witness later states in his affidavit. That he lied on the stand.

In addition, the witness says that the police talked him into giving a statement. (SEE T.T. Coggin Cross-, Vol. C. Pg. 75-76; ex - A-3) This supported the affidavit by witness asserting the coercion and threats by prosecution and police. The prosecution knew that the testimony was false and still allowed witness to testify on the States behalf. The prosecutions action in illiciting testimony from witness; was clearly erroneous and caused defendants trial to be so fundamentally unfair, that it amounts to a deprivation of the 6th and 14th amendments of the Constitution of the United States.

1.

The States actions in this regard amounted to an illegal tactic, calculated to arouse the prejudice of the jury to obtain a conviction. In illiciting testimony from witness clearly jeopardized the appellant's due process rights of trial and so infected the fundamental fairness of the trial. That this is clearly plain error and reviewable by the tribunal and amounted to a misstatement of facts. In US. V. Wong 78 F. 3d 73, 81-82 (2d cir. 1995) it was determined to be reversible error where prosecutor illicited inaccurate testimony. Napue v. State 3 L. Ed 2d 1217, 1221.

The Supreme Court States: That the witness'..."affidavit states that the prosecutor coercers him into lying on the witness stand, it is not specific as to either nature of his alleged lies on the witness stand. It merely states that the prosecutor told him what to say and coerced him with the threat of prison and that "everything" he said at trial about the murder was a lie."

The Supreme Court shows within its response, that the coercion in nature was the threat of prison and as to the alleged lies. The witness stated his whole testimony was a lie. Thereby he is being specific about his lies. His statement is that it all was lies. So not only is the Supreme Courts answer error. It is in violation of defendant's 14th amendment.

The Supreme Court asserts that this issue is procedurally barred do to the fact that this issue was not raised on direct appeal. The evidence of the prosecutor's misconduct of coercion was not available at the time. The evidence was developed after the direct appeal. The evidence of the prosecutor's misconduct of coercion was not available at that time and developed after the direct appeal.

Thereby, according to Rules of appellant procedure, and by Constitutional guidelines, if evidence of misconduct or evidence of innocence comes to light after direct appeal. It is not procedurally barred. Do to the fact, that this evidence could not be obtained by due diligence

2.

until now. By the Supreme Court denying this ground on procedurally barred. It violated the

defendant's 14th amendment to due process. The Supreme Court was obligated to look at this

evidence and investigate it as newly discovered evidence.

The Supreme Court took this evidence and discarded it as hearsay. This affidavit

comes directly from the States witness and depicts specific allegations. This not only justifies an

evidentiary hearing a reversal of the convictions. The Supreme Court did not even entertain an

evidentiary.

Therefore, committed an error by denying the petitioners appeal. If no abjection has been

made at trial to preserve an error for appeal. Appellant should consider the claim under the plain

error standard. <u>Untied</u> <u>States</u> <u>v.</u> <u>Hastings</u> 103 S. Ct *1974 (1984)* when plain error is established,

the defendant need not prove that he is innocent or that the outcome of the trial would have been

different. <u>United</u> <u>States</u> <u>v.</u> <u>Essex</u> 734 F. 2d 832 (D.C. cir. 1984) <u>United</u> <u>States</u> <u>v.</u> <u>Brooks</u> <u>786</u> <u>F.</u>

<u>2d</u> <u>638</u>.

B) Petitioners next claim of prosecutorial misconduct is in their closing arguments. The

prosecutor's comments on the defendant's state of mind and actions were clearly in error. The

prosecutor launched an attack on the defendants testimony, which was not only improper in and

of itself was merely an attack on the defendant's presentation and credibility. (See: Cosgrove

closing arguments T.T. Vol. G. Pg. 64-65; as ex-A-4)

The prosecution is entitled to argue all legitimate inferences of guilt that flow from

evidence presented at trial. Although, the prosecution has this right, the prosecution went beyond

the scope and violated the defendant's 14th amendment right.

There was no evidence at trial to allow the prosecution to proceed in his "vouching" for what a person of reasonable standards would do. (See: Cosgrove argument supra; ex - A -4) (See: Cosgrove T.T. Vol. G. Pg. 66; ex-A-5) (See: Cosgrove T.T. Vol. G. Pg. 69; Ex - A-6)

The prosecutor's remarks concerning, the amount of mental behavior performed by the defendant amounts to misconduct and plain error. The prosecutors' remarks stated were only a minimization, as to render the juror into believing that the crime that defendant was being tried for. People v. Haskett 30 cal. 3d 841, 866. People v. Pitts 223 Cal. App. 3d 606. Clayton v. State Del. Supr. 765 A. 2d 940 (2001)

It was not, however, enough for the prosecutor to insinuate that the defendant was a liar. He proceeded further to continue on in his argument. The prosecutor was saying one thing and clearly meaning another to influence the jurors on the question of guilt and truthfulness of the defendant's testimony. Johnson v. State Del. Supr. 587 A. 2d 444 (1991). Hughes v. State 437 A. 2D 559. Bennett v. State 164 A. 2d 442. Sexton v. State 397 A. 2d 540. Trump v. State 753 A. 2d 963 (2000)

The prosecutor's arguments, thus violated the defendant's Constitutional rights, and caused the defendants trial to be fundamentally unfair. The fact that trial counsel failed to object to this at trial, results in the defendant to seek relief under-"the plain error" standard. An error such as this caused the procedural barred opinion to be void. The prosecution committed this error. The Supreme Court committed error as well as abused its discretion in denying this ground on procedural barred. Thereby, violated the defendant's 14th amendment constitutional rights. Do to such violation, the only rectified remedy was to reverse the convictions and remand for a new trial.

4.

Argument II

The Supreme Court abused its discretion and violated petitioners Constitutional rights. When they denied his appeal of ineffective assistance of counsel.

The petitioner was denied his right to effective assistance of counsel at every stage of the proceedings in the case being submitted for review. Under the 6th and 14th amendments (U.S) as well as Article 1 & 7 of Delaware constitution. A) Defense counsel failed to present or investigate the defendant's mental health issues. B) Defense counsel failed to investigate the background of States witness for proper cross or proper impeachment purpose. C) Defense counsel failed to obtain the opinion of any drug experts prior to trial, regarding the effects of various drugs and how those drugs affect defendant's mental capacity. D) Defense counsel failed to secure witness who had witnessed jury members' discussion of the case in the middle of trial. E) Defense Counsel only met with defendant on three occasions and did not fully discuss the facts of the case with the defendant.

Ineffective assistance of counsel is a mixed question of fact and law subject to de novo review. Greene v. United States 880 F. 2d 1299, 1305. To prevail on a claim of ineffective assistance of counsel, appellant must show (1) that the Counsels performance was deficient and (2) that the deficient performance prejudiced the outcome of appellant's trial. Strickland v. Washington 446 U.S. 668, 104 S. Ct 2052, 2064. In determining whether Counsels performance was deficient, consideration of the reasonableness of this particular case should be cautioned when reviewing counsels conduct.

A) Supreme Court error in denying the appellants appeal on ineffective assistance of counsel. Where as defense counsel was aware that the defendant had a mental illness. (See: T.T. Barnett cross (Evidence Hearing) as ex-A-7) Counsel was informed during the defendant's

5.

incarceration and before trial. The defendant was put back on medication for schizophrenic, depression, bi-polar disorder, and other mental illness. (See: Weiss direct (Evidence Hearing); ex-A-8)

Dr. Weiss States, "that the defendant suffered these illness' since childhood. The defendant also suffered auditory hallucinations and paranoia". (See: mental health records; ex-A-9) So it goes to stand that at the time of the crime the defendant was in a state of schizophrenic hallucination. Where as, he was committing the crime. But in his mind, he was not the one doing so. Thereby any statement he gave at trial would be misguided by his hallucinations.

Defense counsel recognized the defendant's mental illness: (See: letter to doctor; ex-A-10) Trial counsel requested funds for an evaluation by an outside psychiatrist. The court-notified counsel that he had to determine cost and present an application. (See: letter to counsel; ex-A-11) Defense counsel failed to do so. When a lawyer is notified that his client suffers from mental illness, which cause the client to have hallucinations of auditory and visual effects it is his duty to see if his client is aware of the truth of the crimes being charged with. When the lawyer does not do this he in turn, violates Delaware Rules Annotated Rules 1.1 and 1.3 of the client lawyer relationship. Which, in turn violates the defendants 6th and 14th amendments to effective assistance of counsel and due process. In Lord v. Wood 184 F. 3d 1083 (9th cir. 1994). It's stated: "A Lawyer who adequately fails to investigate and to introduce into evidence information that demonstrates his clients factual innocence or that rises sufficient doubt as to that question to undermine confidence in the verdict renders deficient performance. "Gary v. Green 788 F. 2d 350 (7th cir. 1985). United States v. Cronic 446 U.S. 678, 104 S. Ct. 2039.

According to Dr. Weiss "the defendants mental illnesses can come and go at any time, i.e. before and during trial". (See: Dr. Weiss cross (evidence hearing); ex-A-12) That also these

illnesses were a part of defendant's life from an early age. (See: Weiss cross (evidence hearing); ex-A-13) Mr. Barnett knew of these illnesses and yet he did not investigate them in any degree. (See: ex-A-7) In Copas v. Commissioner of Correction 662 A. 2d 718, 727 it's stated; "that had Gruerban investigated the petitioners history of mental illness, he would gathered significant information pertaining to a mental defect defense. In preparation for the Habeas hearing, Kennth Seling an adult clinical and forensic psychiatrist evaluated the petitioner. Seling testified that the courts diagnostic clinic report was deficient, because it included no psychological testing and did not provide any evaluation of possible organic brain damage. "Also, stated on pg. 727, "Seling also testified that the petitioners afflictions become substantially worse when he is under stress..." State v. Magner 732 A. 2d 234, 238 [2] [3,4]. Gillian v. State 629 A. 2d 685.

Mr. Barnett reasons that the defendant would not admit to the crimes. When a defense counsel has a client charged with any crime, who is mentally ill for one reason or another. It is the counsel's duty to seek out the severity of illness. Regardless if the client proclaims innocence. In that sort of situation and counsel is informed and fully aware that his client suffers auditory and visual hallucinations it is counsel's duty under the 6th amendment to seek and investigate help for his client. Not only to be sure that the client can stand trial but to be certain that his client is truthful with him as to the facts and with the best way to proceed for the client. Mr. Barnett alone cannot discern if someone is mentally ill or not. (See: Barnett cross (Evidence hearing); ex-A-14) Seeing how Mr. Barnett did not meet with defendant until February 2001, two months after the defendant was off his medication. He would not know the signs that would usually show the defendants illness. So that means the defendant could very well have been having a delusional episode at that time and misconstrued the facts of hi behavior in the crimes to Barnett.

7.

Trial judge, as well as Mr. Barnett contend that because no bizarre behavior was observed. That counsel was justified in his decision not to investigate. Dr. Weiss testified that you could be around someone and not know that they are mentally ill. (See: Weiss cross (Evidence Hearing); ex-A-15) Also Dr. Weiss, stated that a person does not have to display bizarre behavior to be suffering from a mental illness. (See: Weiss cross (Evidence Hearing); ex-A-16)

Just because a person with a mental illness can sit and have a coherent as well as a rational conversation for a brief moment does not make him well. The defendant suffers from many illnesses. The most developed is schizophrenic-paranoia.

This illness is where the defendant has auditory hallucinations. Now people with this illness will attribute names or personalities to these hallucinations. Most common with people they know or family with. These hallucinations can at times take control, leave the person incapable of making decisions.

The defendant did admit his guilt at trial. But because defense counsel did not fulfill his duty under the 6th amendment and have the defendant evaluated and treated the court assumed the defendant was blaming Jason Coggin for the murder. Whereas "Jason" is one of the auditory hallucination personalities the defendant suffers from.

The Supreme Court holds that the defendant would not have been found incompetent if examined. Where as all the evidence shows that the defendant was mentally ill, before the trial and after the trial. The Supreme Court has committed error, its decision was pure prejudice. Do to the fact that all evidence shows that defendant was mentally ill, and very well likely incompetent.

This is not about the defendant's competence to stand trial. This is about the injustice and violation of the defendant's 6th amendment rights. The defense counsel had knowledge that his client was mentally ill and had problems discerning truth from falsehood. Counsel still did not investigate or perform any duties in helping his client. If counsel would have done his duty to provide by the 6th amendment then he would have seen that defendant was not in a state of mind to choose a defense for himself. Counsel also would have proceeded in extreme emotional distress, diminished mental capacity, and or temporary insanity. Under the instructions of the law, for jurors to take into consideration included the element under second-degree murder, and manslaughter. The defendant's state of mind or mental health, which this instruction presents a conflict as to a proper inference being drawn from and concluded by the jury. There was not available any representation of a certified P.H.D. psychiatrist present to give such information.

It cannot be said that without a doubt, that if this evidence was presented to the jury that the outcome of the trial would have been different. All the court has to do is look at the question presented to the court by the juror, during deliberations. (See: T.T. Vol. H Pg. 4; ex-A-17) when the jury called in, they were asking of the defendant's mental health, thought pattern, and intent.

Mr. Barnett not only prejudiced the defendant, by not investigating the defendant's mental health, Mr. Barnett failed to perform his duty as counsel to a standard of reasonableness. Gary v. Green 788 F. 2d 350. Duonnolo v. State 397 A. 2d 126. In Copas v. Commissioner of Corrections 662 A. 2d 718,727 it's stated, "Seling testified that as a consequence of the petitioners mental illnesses and the stressors he was experiencing in April 1986. The petitioner would have likely have misinterpreted the intentions of others and would have become provoked in situations in which a healthy person would perceive no reason for prevarication. Seling concluded with a reasonable degree of medical certainty that the petitioner was mentally ill and

9.

had suffered from a severity diminished capacity to control his behavior in April 1986. Gruenbaum's failure to investigate caused this mental illness to remain undetected."

Therefore, not only was The Supreme Court in error in denying the appellants appeal but they violated his 6th and 14th amendment rights. Defense counsel was so ineffective in performing his duties that his violation of the defendant's 6th and 14th amendments resulted. The only way to right such an injustice, is to reverse all convictions.

B) Appellant next contends that counsel did not investigate or prepare for cross-examination of witness. (See: T.T. Cross examination Robinett Vol. D. Pg. 43-44; ex-A-18 (See: T.T. Cross Angelini Vol. D. Pg. 89-94; ex-A-20) (See: affidavit from Dr. Mark Bora; Ex-A-21)

If counsel had done an investigation, then he would have found that the defendant never visited the States' witness Orville Robinette's home on the night of the crimes. But in fact was at another persons home at the time Orville says the defendant was at his home. (See: Affidavit, Eddie Meredith; ex-A-22) This information could have resulted in Orville's testimony being deemed perjury. Thereby giving weight to defense.

The trial counsel failed too research and / or investigate the police reports. (See: T.T. Cross Det. Curtis Brown Vol. F. Pg. 149; ex-A-23) (See: T.T. Hawkins

Vol. C. Pg. 27-28; ex-A-24) If counsel would have investigated properly, then counsel could have shown police error. Counsel admitted to receiving evidence that could have shown that Jason Coggin was lying as to his involvement and was committing perjury. (See T.T. Barnett cross (Evidence Hearing) Ex-A-7)

This evidence was a shirt. Believed to be the actually shirt worn at the time of the crimes. Not the clothes he gave to police, 3 days after the crime. Ewing v. Williams 596 F. 2d 391 (1979) In Nealy v. Cabana 764 F. 2d 1173, 1177 (5th cir 1985) States; Counsel has a duty to

interview potential witness and to make an independent investigation of the facts and circumstances of the case. "Lord v. Wood 184 F. 3d 1083. Regardless of counsels views of the case. He has a duty to his client to research, investigate, and interview all potential witness who can help his defense in anyway. When a lawyer does not research, investigate, or interview potentional witness. He is in clear error, thereby violating his client's 6th amendment rights. This caused defendants trial to be prejudiced and one sided and a violation of the 14th amendment to Due process. Gilliam v. State 629 A. 2d 685. United States v. Cronic 446 U.S. 648. Strickland v Washington 104 S. Ct. 2052,2064.

Barnett States "that he did not know who states witness were until the day they took the stand". Yet this is another lie by Mr. Barnett. You can see this by looking at Mr. Barnett's own exhibit known as letter to Judge Stokes. In this letter, Mr. Barnett states that he received witness statements on May 24, 2001 (See: letter by Mr. Barnett; Ex-A-25) that means he received the names of witness at least 2 weeks before the trial. Therefore, given him time to investigate for possible impeachment. Which by talking to witness defendant gave Mr. Barnett would have been able to do. A defendant had an alibi for the night Orville said he was at his home. Mr. Barnett has by his own facts, shown that he lied too the court, violated the Delaware Rules Annotated Rule 1.1. and 1.3 of the client-lawyer relationship, as well as committed perjury.

It is up to the defendant to show ineffectiveness of counsel. But when the evidence speaks so loudly. There is no guessing as to that ineffectiveness. Mr. Barnett asserts he did not know who the witness were or what their statements were and yet in his own affidavit, he shows that he knew who and what were these individuals statements involved. He shows that he had 2 weeks before trial to interview, investigate, and research these witness. Not just for material to show perjury or past criminal history. When Mr. Barnett made the decision to not investigate, he

relinquished all avenues of a proper cross as well as creating indifference in his defense of defendant. Mr. Barnett's decision in not interviewing witness, that defendant gave him to talk to with. Not only limited the defendant's choices in a defense. It violated Mr. Barnett's duties under the 6th amendment. Whether any witness could have caused the trial to be different it will not be known. It can be said without a doubt that these witnesses could have caused the States witness testimony to be subject to review.

In <u>Lord</u> <u>v.</u> <u>Wood</u> supra., It is established that a lawyer who does not interview a witness who has potential to give weight to the defense, is ineffective. The lawyer is obligated to interview the witness. Mr. Barnett had this potential witness and he failed to interview any of the witness. Thereby, violating the defendant's 6th and 14th amendments.

C) Defense counsel failed to obtain the opinion of any drug experts prior to trial, regarding the effects of various drugs and how those drugs affect defendant's mental capacity.

It has been researched and studied over years, a person that suffers with mental illness and who use alcohol and drugs can at times lose sense of time and commit acts of crime . It's been documented in medical new journals, that these people rarely realize what they have done.

Mr. Barnett knew that the defendant was/is mentally ill. Counsel also knew that drugs were a major factor in this case. Given the knowledge that the defendant was on drugs at the time of the crimes and that his perceptions could have been seen altered. It was Mr. Barnett's duty to investigate this area, with at least a minimal degree of interest. <u>Ewing</u> <u>v.</u> <u>Williams</u> 596 F. 2d 391.

Counsel was aware that mind altering substances, such as prescription medication, marijuana, alcohol and other drugs were a major factor of defendants case. By counsel's failure to investigate and obtain the opinion of drug experts or doctors and information on this ground of issues demonstrated a probative value in and of its self. Mr. Barnett committed prejudice as not

12,

affording his client the best possible defense. Thereby violating the defendant's 6th amendment right to effective counsel, resulting in an unfair trial that violated the defendant's 14th amendment to due process.

These facts were key to the trial counsel as to gaining a defense for his client. A trial counsel who has knowledge that his client suffers mental illnesses that causes him auditory and visual hallucinations and does not only suffer these illness, but was also under mind altering drugs. It is with this information a counsel has the duty to investigate to at least secure what his clients allegations are of his own accord and not something his client is perceiving as truth from a hallucination of his illness. Counsel committed error so grave to warrant reversal of all convictions.

When Mr. Barnett failed to perform his duties as counsel. He forced the defendant to proceed in a defense not of his own accord. The defendant was forced to believe the auditory hallucinations as truth. Reinforced by counsels lack of duty to his clients constitutional rights.

Furthermore, it was established early on in the case. That such information was going to be brought forth by the State in argument. Counsel could have introduced into his defense a sound and scientifically proven facts acceptable and recognized by the Federal and State guidelines for substances addiction. These affects' on an individual, as in the case against defendant was prevalent. The counsel's lack of actions subjected error and prejudice upon the defendant in a way that constitutes a violation of the defendant's rights under the United States Constitution. Corpas v. Commissioner of Correction, supra.

D) The Supreme Court error in its denial of defendants claim of ineffective assistance of counsel. Based on the ground that counsel failed to secure witness who had witnessed jury member discussion of the case in the middle of trial. A witness "June Bramble" told counsel that

13,

she saw a juror talking with a family member of the victims during the trial. Mr. Barnett brought this to the court, but he did not secure the witness in order to be sure to get all the evidence. (See: T.T. afternoon session Vol. B. Pg. 89-92; ex-A-26)

Even after the hearing of juror No 2. Mr. Barnett States to the court "that he will contact Mrs. Bramble, to see if she was sure of what she saw". It was Mr. Barnett's duty to investigate Mrs. Bramble's statement. As it would have gave the defense a vital tool in the trial of jury tampering. In turn, if Mr. Barnett would have done his job as counsel to investigated a potential witness. It cannot be said that the trial would not have resulted in a mistrial. Therefore, a new jury would have been picked for a new trial. And the outcome of that trial could have resulted in a whole other outcome. Nealy v. Cabana 764 F. 2d 1173, 1177. Stricland v. Washington supra.

By counsel's failure to secure and interview the witness, counsel violated the defendants 6th amendment. Should counsel had secure witness and gained an affidavit from witness. Then the judge could have been brought forth the witness. And did a proper investigation. Mr. Barnett had the witness's address and phone number. Yet never once tried to investigate into a matter that could have been resulting in a mistrial. Crisp v. Duckworth 743 F. 2d 580 (1984) States: "An attorney does not provide effective assistance if he fails to investigate sources of evidence which maybe helpful to the defense. "United States v. Decoster 487 F. 2d at 1201 states: "A court should not second guess strategic and factual choices made by trial counsel. However, when counsels choices are uniformed... a defendant is denied effective assistance of counsel."

Mr. Barnett failed to perform his duties under the 6th amendment. When counsel fails to pursue, investigate, and present evidence that could change the outcome of the trial to clients favor. Then counsel has prejudiced the defendant to such a degree to constitute a violation of his

rights and cause a reversal of all convictions. Due to counsel's failure to provide adequate and effective assistance of counsel.

E) Defense counsel only met with defendant on three occasions and did not fully discuss the facts of the case with defendant. When counsel only met with defendant on three occasions, counsel violated rule 1.3 and 1.4 (A) and (B) of the Delaware annotated Rules client - lawyer relationship. <u>Strickland</u> <u>v.</u> <u>Washington</u> supr. (See: letter to Barnett; ex-A-27) (See: letter to prothonotary; ex-A-28) (See: letter to Barnett from judge; ex-A-29)

Defense counsel's lack of diligence and communication with the defendant violated the defendant's 6th amendment rights to effective assistance of counsel. Defense counsel did not make any attempts at presenting a different defense: other then not guilty for the defendant. During the first meeting with counsel defendant spoke to counsel about his culpability in the crimes. And counsel could have established exculpatory evidence supporting the reliability, credibility, and validity of defendant's truthfulness. According to the law, a defendant is entitled to a fair representation.

Counsel's performance should raise sufficient doubt to the jurors in making an inference decision. Weighing the burden of proof by establishing clear and concise factors that demonstrate a reasonable doubt prior to deliberations. When counsel fails to provide such supporting evidence on appellant's behavior. Prejudice occurs and the likely hood of juror's ability to deliberate in all fairness, when deciding on a lesser included charge cannot happen.

Remedies exist in client-lawyer relationship clause in the following manner. An attorney is warranted under oath by the legal bar association with standards of ethical conduct. Representation of a client includes all means of good faith in the client's truthfulness. An attorney can only establish such a relationship by his client's statements. Which can only be

validated by attorneys' investigation. In this case, the defendant told attorney that he was

mentally ill, suffering auditory and visual hallucinations. It was then up to counsel to determine

defendants mental state, as for trial. But more importantly it was counsel's duty to spend more

time with defendant. This could have established grounds for rather or not counsel was actually

getting the truth as it was or a hallucination from the defendant. In order to do this, counsel

would have had to spend more than 3 visits of 30 minutes each with the defendant.

Trial counsel did not fulfill his duty of performance outline in the 6th amendment of the

U.S. Constitution. Trial counsels failure to visit, discuss, or have the defendant evaluated, clearly

jeopardized defendants rights to a fair and impartial trial. Defense counsels failure to pursue

reasonable available claims was so egregious as to constitute ineffective assistance. Such failure

is not only cause to excuse procedural default, but is an independent ground for reversal.

Counsel's lack of communication with defendant to establish facts and defense caused severe

prejudice to defendant. It was a denial of his due process rights under the 14th amendment of the

U.S. constitute. Gilliam v. State 629 A. 2d 685. Stricland v. Washington supra. Copper v. Fitz

harris 586 F. 2d 1325 (9th cir. 1978)  (en banc) cert. Denied, 440 US. 974 (1979)

For the reasons stated and authorities cited. The Supreme Court error in denying the

defendants appeal on ineffective assistance of counsel.

Argument III

The Supreme Court abused it's discretion and error in denying the petitioners appeal on

trial court error: A) Trial court error by finding no prejudice in juror members discussion of the

case outside of trial, without confronting witness. B) The trial court abused it's discretion in only

granting a cautionary instruction in his rebuttal closing argument that defendant's testimony was

tailored to fit the evidence he had seen and heard through out his trial, i.e. that his testimony was

false. C) The trial court abused its discretion in denial of co-counsel given-the nature and

complexity of the case. D) Trial court error in its denial of defendant's motion to dismiss counsel.

Petitioner asserts that the Court's answer was not only in error. But was a violation of

the defendant's 14th amendment.

A) The Supreme Court error when it denied defendants appeal on trial courts abuse of

discretion. The trial court failed to properly investigate a juror's bias and misconduct. Thereby

dismissing for the misconduct. During the trial a juror was seen out side the court. Talking with

one of the victim's family members. The witness (June Bramble) notified the defendant's

attorney at this time. There was a conference. (See: afternoon session, Vol. B. ex A-26) Trial

court was aware of a witness to juror's misconduct. Yet did not question or even attempt to gain a

statement from witness. Capano v. State No. 110 and 149 (2001)

The Superior court and the Supreme Court believe that because the Superior Court

questioned the juror and the juror denied the misconduct. The defendant's constitutional rights to

a fair and unprejudiced trial were held in tact.

Through the trial courts failure to secure and question the witness. The trial court

prejudiced the defendant's 14th amendment rights to such a degree. This resulted in the

defendant's trial to be fundamentally unfair. It is the duty of the court to uphold the integrity and

17.

fairness of the trial for the defendant. So when the trial judge having knowledge of a witness who seen the jurors misconduct and not call that witness, violates defendants 14th amendment.

Trial judge could not make a just and logical decision without the witness' testimony. Without the witness the trial court committed a grave injustice to the defendant. In Pierce v. U.S. 402 A. 2d 1237 it is quoted; "An informed choice…requires that the trial courts determination be based upon and drawn from a firm factual foundation. "Johnson v. Untited States 398 A. 2d 354.

Trial court did not have personal knowledge of the facts, for which the opinion was derived. The opinion was not rationally supported, i.e. apparent to trial court there was a witness to the misconduct. And was needed to aid trial court in reaching an accurate and just resolution.

Defendant's constitutional rights were substantially prejudiced. By trial court jeopardized the fairness of the trial process, as to where the jury member could have and was tainted by family member of the victim. MacDonald v. State No 61 (2002)Wainwright v. State 504 A 2d 1096. From the admission of the trial court to decide the guilt of the defendant, without calling the witness in for their statement constitutes a clear prejudice of the defendant's constitutional rights. This amounts to reversible error.

B) The trial court should have declared a mistrial because of prosecutorial misconduct in their closing rebuttal that implied to the jury that the defendants' testimony was not trustworthy because, he had tailored his testimony to fit the evidence at trial. (See: T.T. Closing Rebuttal argument Vol. G. Pg. 88-105 as ex-A-30) (See: cross examination Robert W. Hassett Vol. F. Pg. 103-104; ex-A-31) The Supreme Court has stated time and time again that prosecutions must recognize that vouching is unprofessional and that they may risk reversal if they state or clearly imply to a juror in a criminal case that they believe the testimony of any witness. (Emphasis Added) Trump v. State DE Supr. 753 A. 2d 963. Further, this court has

approved the American bar associations standards that a prosecutor should not express his personal belief or opinion as to the truth or falsity of any testimony or guilty of the accused 12 ABA standards for criminal justice (3-5.8) (B) (3rd cir. 1993) A prosecutor has a special duty to avoid improper suggestions and insinuations. United States v. Roberts (9th cir) 618 F. 2d 530, 533 (1980).

In this case the defendants credibility was a central issue despite the physical evidence. In addition, the defendant's statement was consistent from the time of being incarcerated, which was and has been that "his friend (Jason) killed his stepmother without warning and to his surprise". The prosecutors' rebuttal arguments clearly suggest that the defendant was lying and tailored his testimony to match the evidence in the case. In Brokenbrough v. State, Del. Supr. 522 A. 2d 855 (1987) this court noted that repetition of the same type error prosecutors in closing arguments, despite repeated reported admonitions. This misconduct presents a conduct of bias and ethical error for which implications that prosecutions actions were intentional, careless, and unprofessional. The court stated the criticism would not fall on def ears and that Judicial admonition, even in this type is improper for closing arguments because it leaves no debate from a defendants counsel. As a general rule, prosecutors may not express their personal opinions or beliefs about the credibility of witness or about the truth of testimony. Brokenbrought, supr. At 855,864.

As a corollary to this rule, this court has held that prosecutors may refer to statements or testimony as a "lie" only (1) if one may legitimately infer from evidence that the statement is a lie and (2) if the prosecutor relates his argument to specific evidence, which tends to show that the testimony or statement is a lie. Huges v. State Del. Supr. 437 A. 2d 559, 571 (1981). As officers of the court and as representatives of the State, prosecutors have a special duty to ensure

19.

that any convictions are based on the evidence presented at trial, rather than on bias of the prosecutor's personal opinion. Trump. Supra. Where prosecutors fail to provide the truthfulness of a witness, they impermissibly tip the scales against the defendant. *id.* In this case the opposing counsel made no improper comments on the credibility of states witness during the defense closing, as there was in Clayton v. State Del. Surp. 765 A.2d 940 (2001). In previous citation the court held that both sides had manipulated arguments and comments did not taint the jury's deliberations. As in United States v. Young 470 U.S. 1 (1985) Miller v. State Del. Supr. 750 A. 2d 530 (2000).

The case by Justice Harnett was reversed stating that the prosecutor's comments vouched for veracity of Wilmington police detective Elliot. Justice Harnett wrote the police in Delaware. In addition, regarding to prosecutorial comments being uninvited and impermissibly creating an inference of guilt, the comments must satisfy two threshold requirements. The comments must be both prejudicial and must create an inference of guilt when viewed in the context of the whole record. Robertson v. State 569 A. 2d 1345 (1991)

The case before the court meets these requirements. First the prosecutor's comments clearly implied that the defendants testimony was a lie in that after listening to all the evidence, he had tailored his testimony. Second, they were clearly prejudicial, despite the volume of evidence presented at trial regarding the crime. No one piece of evidence clearly established that the defendant killed Sherri Hassett. The case relied heavy on the credibility of the defendant whom sustained that, Sherri Hassett, was killed by Jason. According to defendant "Jason changed his clothes after the murder and the cloths Jason gave to State police were not the ones he wore". Jason did not turn in those cloths were never found during the search of Mr. Hassett's apartment. In which by Jason's own admission he was supposed to have left the clothing at the

20

apartment prior to the murder. Furthermore, state police confirmed that Jason's residence was not searched for any bloody cloths.

There is nothing in the case Miller, supra. That opened the door to the prosecutor's comments. Defense counsel carefully avoided implying that Mr. Coggin's testimony was untruthful. In this case defense counsel objected and the court instructed the jury as following: "of course, the defendant who was a witness in this case, was here during the testimony of other witnesses but, he has every right to be here too. You should take everything into consideration in determining credibility, but there is nothing untoward about the defendant being present when other witness are testifying."

Improper vouching occurs when the prosecutor implies that he possesses some personal superior knowledge beyond that logically inferred from the evidence presented at trial that the witness has testified untruthfully. Sauders v. State, 602 A. 2d 632 (1984); Robertson v. State supra. Statements by the prosecutor as to the credibility of a witness, in this case the defendant, is a special concern because, jurors may overlook important aspects of the witness credibility. The comment   the prosecutor implied that defendant lied in some effort to point the finger at the wrong person. These remarks were clearly improper. Rule 3.4 (e) of the Delaware rules of professional conduct prohibits an attorney at trial from asserting personal knowledge of facts in issue or the credibility of a witness or innocence of an accused.

The Supreme Court stated in Miller, supra, "The line between permissible and impressionable argument is a thin one. Neither advocate may express his personal opinion as to justice of the cause or the veracity of the advocates' personally endorsing or vouching for or giving his opinion; the cause should turn on the evidence, not on the standing of the advocate, and the witnesses must stand on their own." The prosecutors calling into question the credibility

21.

of a witness is a special concern because jurors may easily interpret that as a comment on important aspects of the witnesses credibility, or important aspects of the witness" credibility, or lack thereof. The trial court cites Agard v. Portundo 526 U.S. 1016 (1999)

Also, Agard is distinguishable in that the Delaware cases ban such statements in arguments. As the dissent in Agard stated, an attack on the defendant's credibility may not come after the defense has ended its case. Justice Ginsberg wrote that such attacks might come in cross-examination, even if the prosecutor could not point to any facts evidencing that. She stated those defendants might display signals of untrustworthiness and that is the providence of the jury to detect and interpret. She stated that the accusation in summation prevents the defense from answering the charge.

C) The trial court abused its discretion in denial of co-counsel given the nature and complexity of the case. The trial court denied counsels request for co-counsel. (See: Docket sheet; ex-A-32) Due to the nature and complexity of the case, the trial judge should have ordered a hearing to better determine the action most appropriate. Pierce v. U.S. 402 A. 2d 1237. The trial courts lack of consideration and interest in this matter shows a prejudice that amounts to plain error.

In Pierce v. U.S. supra., it is quoted: "An informed choice… requires that the trial courts determination be based upon and drawn from a firm factual foundation." Johnson v. United States 398 A. 2d 354.

The trial courts decision in the matter was not based upon a firm factual foundation. This is shown by trial courts response time to counsels request. It was the duty of the court to order a hearing to guarantee the defendant his right to effective assistance of counsel, under the 6th and

14th amendments. <u>Pierce</u> <u>v.</u> <u>U.S.</u> <u>supra.</u> <u>Avey</u> <u>v.</u> <u>State</u> 228 A. 2d 614 <u>State</u> <u>v.</u> <u>Beaulieu</u> 325 A. 2d 263.

The trial courts decision not to have a hearing in which to gather information to base his decision on; prejudiced the defendant in a way to be considered reversible error. The trial court could not weigh in all the factors of the case with out a proper hearing. By counsels request for co-counsel was showing court that he was unable to handle and be effective on this case alone. Trial court was aware of this, and disregarded it as not a factor.

Through trial courts decision to deny counsels request, the trial court violated defendants 6th and 14th amendment rights to effective assistance of counsel. This prejudiced his trial.

D) The trial court erred in the denial of defendant's motion to dismiss counsel. (See: Docket sheet; ex-A-32) (See: motion to disqualify counsel); ex-A-33)

The trail court knew that the defendant was dissatisfied with representation of the trial counsel. The defendant wrote the court on numerous occasions. Court responded by sending defendant request to counsel. (See: letter to judge; ex-A-34) (See: letter to defendant; ex-A-35) The defendant noted rule 1.1,1.3 and 1.4 (A) and (B) that the defense counsel had been in violation of the client-lawyer relationship.

In addition, stated how counsel was treating the defendant. The court did not order a hearing or investigate this matter. Which caused the defendants constitutional rights to be violated. <u>Gregory</u> <u>v.</u> <u>State</u> No. 161 (2002) <u>State</u> <u>v.</u> <u>Beaulieu</u> 325 A. 2d 263. The courts actions resulted in a violation of defendant's rights. For the reasons stated and authorities cited, the Superior court abused its discretion in denting appellant's motion for post conviction relief.

The trial court violated the defendants 6th amendment right to effective assistance of counsel. By and through the trial courts lack of concern and interest in this matter, the trial court

23.

caused the defendants trail to be fundamentally unfair. Through the trial courts decision to deny

defendants request. Through the trial courts decision to deny defendants request. The trial court

forced the defendant to proceed with ineffective counsel. Thus counsel would not proceed in a

manner that would offer the defendant other options, such as extreme emotional distress as a

defense. This by no means infers the defendant's admissions to the said crime, but rather shows a

violation of his rights in that his option was restricted as to his defense. As where a new trial

counsel could and would have proceeded as the defendant wanted. Gregory v. State No. 161

(2002)

### Relief Sought

Wherefore, petitioner Robert W. Hassett 3rd, moves this Honorable Court to grant the following relief:

A) Accept jurisdiction over this case pursuant to 28 U.S.C. {2254; B) Require the respondent to answer the allegations in this petition and the brief in support; C) Hold such evidentiary hearings as this court may deem necessary or appropriate; D) Issue an order by this Court, that this court grants petitioners writ of habeas Corpus; E) Issue an order that case be reversed and remanded for new trial or dismissed.

8-12-05

Robert Hassett

25.

## Certificate of Pro se Counsel

Robert W. Hassett 3rd., pro se, hereby cerifies that the statements of fact in the accompanying Petition and Brief are true to his knowledge, and that statements made on information and belief are true to the best of his knowledge and belief.

Respectfully submitted,
Robert W. Hassett III
Robert W. Hassett 3rd
P.O. Box 500 S.C.F.
Georgetown, Del. 19947

Date: 8-12-05

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR SUSSEX COUNTY


STATE OF DELAWARE          :   Def. ID# 0005011315

     v.                     :

ROBERT W. HASSETT, III        :


DECISION ON REMAND REGARDING

CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL


DATE SUBMITTED: October 8, 2004

DATE DECIDED: October 14, 2004


Robert W. Hassett, III, pro se, Sussex Correctional Institution, P.O. Box 500, Georgetown, DE 19947

James W. Adkins, Esquire, 114 E. Market Street, Georgetown, DE 19947

Thomas D.H. Barnett, Esquire, 512 E. Market Street, Georgetown, DE 19947


Stokes, Judge

This pending motion for postconviction relief which Robert W. Hassett, III ("defendant") filed pursuant to Superior Court Criminal Rule 61 ("Rule 61")is currently before the Court on a remand from the Supreme Court. Hassett v. State, Del. Supr., No. 468, 2003, Holland, J. (May 20, 2004). The remand is limited to this Court considering defendant's claims of ineffective assistance of counsel. This is my decision denying the motion on the ground that trial counsel was ineffective.

PROCEDURAL HISTORY

On May 14, 2000, Sherri Hassett, defendant's stepmother, was stabbed to death with a knife. Defendant was arrested for and tried on the charges of murder in the first degree and possession of a deadly weapon during the commission of a felony. Defendant's defense was that his friend Jason Coggin killed her; Coggin's testimony was that defendant killed her. The jury rejected defendant's version of events and convicted him as charged. The Delaware Supreme Court affirmed the judgment of the Superior Court. Hassett v. State, Del. Supr., No. 420, 2001, Steele, J. (May 15, 2002).

On May 2, 2003, defendant filed motions for a new trial and a motion for postconviction relief pursuant to Superior Court Criminal Rule 61 ("Rule 61"). The Court denied the motion for a new trial. State v. Hassett, Del Super., Def. ID# 0005011315, Stokes, J. (August 25, 2003) at 3-5. The Court also denied the

1

motion for postconviction relief. Id. at 5-15.

Defendant appealed those decisions to the Supreme Court. The Supreme Court reviewed the filings and determined that "[u]nder the circumstances alleged in Hassett's postconviction motion, it would be helpful to have a more complete record." Hassett v. State, Del. Supr., No. 468, 2003, Holland, J. (May 20, 2004)at 2. That Court remanded the matter to this Court to obtain trial counsel's response to the postconviction motion and then to determine if a hearing was desirable. Id.

Thomas D.H. Barnett ("trial counsel") submitted a response to the Rule 61 motion in affidavit form. Thereafter, defendant filed two pleadings. One sought a hearing on the postconviction relief motion. The other, labeled "Motion for Production of Mental Health Records", set forth allegations which previously had not been made in this Court. These allegations are that due to mental health issues that he was suffering after his arrest, defendant was not competent to render a decision as to his defense and had trial counsel rendered effective assistance of counsel, there would have been "a better way of proceeding to best fit the defendant's interests." It could be argued that defendant made these arguments at page 11 of his brief filed with the Supreme Court. Because this case was due back to the Supreme Court, this Court considered it more expedient to hold a hearing

2

rather than require further submissions on these issues.[1] Thus, the Court held a hearing on October 8, 2004, on the limited issues of whether defendant was competent prior to and during trial and whether trial counsel rendered effective assistance of counsel in connection with defendant's mental health situation.

In this decision, I reconsider the portion of the Rule 61 motion dealing with ineffective assistance of counsel claims. This decision replaces that portion of this Court's decision of August 25, 2003, which addresses the ineffective assistance of counsel claims. All other portions of the August 25, 2003, decision remain intact.

DISCUSSION

I) Applicable standard

Where a defendant makes a claim of ineffective assistance of counsel, he must show that counsel's errors were so grievous as to fall below an objective standard of reasonableness and he must show to a reasonable degree of probability that but for counsel's unprofessional errors, actual prejudice resulted. Strickland v. Washington, 466 U.S. 668 (1984). In addition, the allegations must be concrete; vague and conclusory allegations fail. Younger v. State, 580 A.2d 552, 555 (Del. 1990).

---

[1]A mere allegation of a defendant's incompetency in a postconviction relief motion will not result in a hearing on that issue.

3

II)' Specific allegations

1) Failure of trial counsel to have defendant evaluated by a psychiatrist for defendant's competency to aid in his defense

As previously noted, defendant contended that he was not competent at the time of trial to make an informed decision regarding his defense. Defendant refined his contention at the hearing. His argument, as refined, is as follows. Mr. Barnett was aware that defendant suffered a mental illness. That fact required Mr. Barnett to have him undergo a mental evaluation. Because defendant was not on psychological medications before and during the trial, he was not sane and could not make a rational decision regarding his defense. Thus, Mr. Barnett was ineffective for not having defendant evaluated to determine his lack of competency.

During the Rule 61 hearing, the Court asked defendant twice if he wished to testify under oath. Both times, he declined.[2] The only sworn evidence from defendant which this Court can consider regarding his mental competency at the time of trial is his sworn testimony on cross-examination set forth below.

_____

[2]During the hearing, defendant explained several times that he currently was on medications for his mental illnesses and those medications where what allowed him to be able to intelligently participate in this hearing. The Court observed defendant's demeanor and participation in this hearing. There is no doubt that he was competent at this hearing. This finding is made to foreclose any future argument defendant might want to make regarding his ability to participate in these postconviction proceedings and the Rule 61 hearing.

Q. If your mother said something on the tape to the police like he said I killed a family member and I asked him are you sure and he said, yes, mom, then she's wrong about that too?

A. Yes.

Q. Because she is just some type of nut case?

A. I didn't say she was a nut case, but, yes, she did have problems.

Q. More than you?

A. If you say I do. I have been evaluated. They say I'm sane.

Q. You know what you are doing, don't you?

A. Yeah, I do. I know what I'm doing; I'm telling the truth.

Trial Transcript from proceedings held on June 19, 2001, at F-122 - 23.

At the Rule 61 hearing, Mr. Barnett testified as did Allen Weiss, M.D. Also, defendant's medical records from the time of his incarceration until the present were submitted.

When defendant was incarcerated on May 14, 2000, he was experiencing symptoms of mental illnesses. Dr. Weiss, a psychiatrist who worked at Sussex Correctional Institute, evaluated him on May 16, 2000, and diagnosed him with schizoaffective disorder, polysubstance abuse disorder, alcohol dependence, antisocial personality disorder, and post-traumatic stress disorder. Dr. Weiss prescribed medications. Defendant's symptoms of mental illness began subsiding. In December, 2000,

defendant told the doctor he no longer wanted to be on the medications and they were causing him to gain weight. Dr. Weiss, concluding that defendant was stable and did not appear to be a threat of danger to himself or others, allowed defendant to go off the medications based on his refusal to continue to take them. Defendant continued to be evaluated by the mental health professionals at the prison for the purpose of determining whether he continued to remain mentally stable. Dr. Weiss stopped working at the prison in February, 2001. However, defendant's medical records make clear that defendant did not exhibit any symptoms of active mental illnesses from December, 2000 through the trial. Defendant's illnesses are cyclical, and he was stable from the time he was off his medicines through his trial.

Dr. Weiss opined that based on his observations of defendant and the medical records, defendant, during the time in question, had sufficient present ability to consult with a lawyer rationally, had a rational and factual understanding of the proceedings against him, and was able to assist in preparing his defense.

Mr. Barnett testified to the following. He was aware that defendant had had "issues" before the murder. Mr. Barnett, at the urging of defendant's mother, took steps to have defendant undergo a mental evaluation with Dr. Sibley. The purpose of the evaluation would have been to determine if there was a basis for

6

A-4