a defense of diminished capacity. However, once defendant adamantly refused to admit that he had killed Sherri Hassett in order to advance such a defense, Mr. Barnett saw no reason to pursue the mental evaluation and he never had defendant evaluated. Mr. Barnett did not review defendant's medical records from his incarceration. Mr. Barnett never witnessed any behavior of defendant that was anything but normal before and during the trial; i.e., defendant never exhibited any bizarre behavior which would have indicated that he might be suffering from any active mental illness. Defendant was able to review evidence with Mr. Barnett, defendant directed his own defense, defendant sent letters to the Court during this time frame which were coherent and oriented as to time and place, defendant was attentive during his trial and defendant knew what was occurring. Defendant was quite capable of participating in his defense. He was perfectly rational. There was no reason for Mr. Barnett to question defendant's competency and have him evaluated.

This Court observed defendant during trial and during his testimony at that trial. There never was any behavior to cause the Court to question defendant's competency. He was attentive during trial. He responded to the questions asked. He was oriented as to time and place.

I make the following findings of fact based on the evidence. Defendant was competent from December 2000 through the trial.

7

Furthermore, there was nothing to indicate to Mr. Barnett that defendant was suffering any active symptoms of mental illnesses from December, 2000 through his trial in 2001. There was no basis for Mr. Barnett to have defendant undergo a mental evaluation to determine his competency. There was nothing to indicate that defendant was anything but competent during this time period.

Defendant seems to think that just because he had suffered a mental illness, been treated for it, and was no longer treating, that in itself shows he was not competent. The fact a person is mentally ill is not what determines competency. Competency is determined by whether the defendant is able to consult with his lawyer rationally, whether the defendant has a rational as well as a factual understanding of the proceedings against him, and whether the defendant is able to assist in preparing his defense. State v. Shields, 593 A.2d 986, 1004 (Del. 1990). The evidence shows that during the time period in question, nothing occurred which would have put Mr. Barnett on notice that defendant needed to be evaluated for competency issues. Mr. Barnett was fully justified in concluding that defendant was competent to participate in his defense. Mr. Barnett was not ineffective for failing to have defendant evaluated for competency to stand trial.

Besides failing to establish trial counsel was not ineffective for failing to have defendant examined for his mental

competency, defendant also has failed to show prejudice. First, defendant would not have been found incompetent if examined. Even assuming defendant would have been deemed incompetent during the time period in question, defendant would have had to go to trial once he was deemed competent. He has failed to state what his defense would have been once that occurred. Defendant, to this day, never has stated that he would have employed a defense where he admitted to killing Sherri Hassett and how that defense would have been successful so that the outcome would have been something other that what it was. Thus, defendant has failed to establish either <u>Strickland</u> prong.

This ground fails.

2) Failure of trial counsel to investigate the evaluations and findings of Dr. Weiss

Although he has not advanced the argument before this Court, defendant did argue to the Supreme Court that Mr. Barnett was ineffective for failing to investigate the evaluation and findings of Dr. Weiss. The testimony showed that Dr. Weiss considered defendant stable and competent during the time period in question. Thus, even if I found Mr. Barnett was ineffective for failing to investigate defendant's mental health treatment during his incarceration, I conclude there was no prejudice in

this failure.[3]

This claim fails.

3) Mental health issues, drug issues, and an alternative defense

Defendant advances three separate arguments which relate to one premise. The premise is that defenses of extreme emotional distress, diminished mental capacity or temporary insanity might have been more successful than the "I did not do it" defense was. These arguments differ from the competency issue examined above. They are alternative arguments.

First, defendant argues that trial counsel failed to investigate or pursue defendant's mental health issues and that if he had, defendant might have been found not guilty or guilty of a lesser charge based on defenses of extreme emotional distress, diminished mental capacity or temporary insanity. He also argues that trial counsel failed to obtain the opinion of any drug expert prior to trial regarding the effects of various drugs and how those effects affected the defendant's psychological condition.[4] Finally, defendant argues that because

---

[3]The only prejudice is that which Mr. Barnett noted during the hearing: prejudice to the justice system. If Mr. Barnett had talked with Dr. Weiss and examined defendant's mental health records before the trial, then, as Mr. Barnett noted, defendant would have been foreclosed from raising this issue post-trial.

[4]Defendant does not contend that intoxication should have been asserted as a defense. Instead, he argues that his drug usage resulted in a psychological condition which could have lessened

trial counsel only met with him three times and did not fully discuss the facts of the case with him, trial counsel did not gather sufficient information to pursue a better defense than the one that he was not guilty.

Trial counsel's testimony at the Rule 61 hearing echos what he explained in his affidavit with regard to these alternative defenses:

> (A) Counsel did speak with Mr. Hassett and his mother regarding his mental condition and reviewed documents provided by other family members. Counsel also wrote to Dr. Sibley regarding the possible mental health issues. However, when counsel explained to Mr. Hassett that he would have to admit to stabbing his stepmother in order to raise the defenses he refused to do so and counsel was left with the sole defense that Jason Coggin had killed Sherry [sic] Hassett.
>
> ***
>
> (C) Evidence of voluntary intoxication is not admissible under Rule 401(c) as a defense. Further, the defendant would have had to have admitted he stabbed Mrs. Hassett which he refused to do. Counsel sees no way such a defense could be raised when Mr. Hassett adamantly denied killing his stepmother. Therefore, any defense of this type was not available to counsel.
>
> ***
>
> (E) Counsel has no record of exactly how many meetings there were with Mr. Hassett, either in the Courthouse or at the prison. However, counsel does deny that the facts of the case were not discussed with Mr. Hassett. Counsel kept Mr. Hassett apprised of the case and also spoke with his mother and Mrs. [June] Bramble [Mr. Hassett's aunt] on several occasions. Mr. Hassett not only participated in the defense and strategy of his case, he directed counsel on how to proceed and what defense to use.

Trial counsel's response incorporated a June 5, 2001, letter

_____

his culpability.

he wrote the Court, as an officer of the Court. This letter was written before the trial began on June 11, 2001, and it sets forth the various preparations trial counsel had taken in connection with the case, which included meeting with defendant, his mother and his aunt. Of significance is the following statement:

> I also spoke with David Sibley, M.D., in Dover regarding a possible mental examination but after meeting with Mr. Hassett at the prison that idea was discounted as a defense.

Defendant's trial testimony is consistent with the defense strategy which was based on his contention he did not kill his stepmother.

A. *** She [Sherri] went and stepped in front of Jason and Jason stabbed her.

Q. Did you know Jason was going to stab her?

A. No....

Trial Transcript from proceedings held on June 19, 2002, at F-72.

Q. Is it your testimony that you did not kill Sherri Hassett?

A. Yes, that's my testimony.

***

Q. Did you intend to killed [sic] Sherri Hassett?

A. No.

Q. Did you plan to kill Sherri Hassett?

A. No.

12

\* \* \*

Q. Were you surprised when Jason Coggin stabbed
Sherri Hassett?

A. Yes, I was.

Q. Did you expect that he was going to stab her when
you were standing outside with him?

A. No, I wasn't.

Trial Transcript from proceedings held on June 19, 2001, at F-78-
79.

The previously quoted portion of defendant's testimony on
cross-examination underscores his understanding of his version of
the killing where he emphatically states that he is telling the
truth.

To have employed the alternative defenses would have
required defendant to have admitted that he had culpability in
Sherri Hassett's death. Ross v. State, 768 A.2d 471 (Del. 2001)
(raising an affirmative defense constitutes an admission of
culpability in the death). Defendant does not clearly set forth
his argument regarding the alternative defenses. Part of the
reason for the lack of clarity is defendant's refusal to admit he
killed Sherri Hassett. It may be that defendant is arguing trial
counsel should have presented alternative defenses to the jury;
i.e., defendant did not kill his stepmother, but if he did, his
mental health problems lessened his culpability. It may be that

13

he is arguing that if trial counsel had spent enough time with him and more thoroughly investigated the case, then trial counsel would have been able to determine that one of the affirmative defenses would have been a better defense than the "I did not do it" defense, despite defendant's contention he did not kill Sherri Hassett.

Trial counsel could not have taken either strategy alluded to above because to do so would have required him to present fraudulent evidence, something he could not have done. Delaware Lawyers' Rules of Professional Conduct, Rule 3.3.[5] Once defendant told trial counsel that he had not killed his stepmother, defenses which sought to reduce or excuse his culpability were not available to defendant. Consequently, trial counsel was not required to investigate or pursue defendant's mental health issues or to obtain the opinion of any drug expert prior to trial regarding the effects of various drugs on defendant's psychological capacity. Thus, defendant cannot show, based on his trial strategy and his testimony, that the outcome of his case would have been different had his trial counsel performed an investigation regarding his mental state and/or psychological

---

[5]In Delaware Lawyers' Rules of Professional Conduct, Rule 3.3, it is provided in pertinent part as follows:

> (a) A lawyer shall not knowingly:
> ***
> (3) offer evidence that the lawyer knows to be false.

14

capacity or had trial counsel spent more time with him.

These grounds for postconviction relief fail.

4) Investigation of witnesses

Defendant asserts that trial counsel failed to investigate or properly prepare for cross-examination in order to be able to properly impeach witnesses. Defendant never specifies what it is that trial counsel would have learned in such an investigation and how that would have changed the outcome of the trial. Instead, what he does is submit citations to transcript pages, questionnaires from several people, an unverified, unsworn statement from his mother, and an unverified, unsworn report from his mother's psychiatrist[6] in support of vague statements that no investigation was done.

Trial counsel responded as follows to this claim:

Counsel was not informed by the State of the witnesses [sic] identity until the trial began, and only received copies of their statements on the day that the witness took the stand, both of which are standard procedure in criminal trials.

Defendant disputes this contention. Whether this statement on trial counsel's part is totally accurate is irrelevant because

---

[6]Defendant submitted this report from Mark S. Borer, M.D., his mother's psychiatrist. His mother thereafter requested that the Court seal this document. The document contains inadmissible hearsay and the information in it does not in any way advance defendant's request for postconviction relief. Accordingly, the Court previously ordered that this report by Dr. Borer be sealed and not be opened absent leave from this Court. State v. Hassett, supra at 14 n. 7.

15

defendant leaves it to the Court to figure out what he is arguing. Establishing ineffective assistance of counsel is not the Court's responsibility; that responsibility lies with defendant. Without specifying how trial counsel's investigation was not reasonable and how the outcome of the trial would have been different had trial counsel conducted an otherwise reasonable investigation, the vague assertions fail. <u>Younger v. State</u>, 580 A.2d at 555.

This claim fails.

5) Failure to interview witness

Defendant argues that trial counsel failed to secure and interview the person who reported possible contact between Juror No. 2 and a member of Sherri Hassett's family. Trial counsel's response clarifies that June Bramble, who is defendant's aunt, reported this encounter.[7]

As explained in my August 25, 2003, decision on the Rule 61 motion, the following occurred regarding Juror No. 2. Ms. Bramble reported to trial counsel that a member of Sherri Hassett's family possibly may have had an encounter with Juror No. 2. Ms. Bramble left the courthouse. The Court questioned Juror No. 2 in Chambers regarding any possible encounter. Juror No. 2 told the Court that no one had had contact with her about the case. The Court was satisfied with her answer. Since Ms. Bramble was not available,

---

[7]This Court was not made aware of the identity of the court spectator who reported the possible contact until trial counsel submitted his response.

16

the Court instructed trial counsel that if he learned that Ms. Bramble had a different version from that of Juror No. 2, then the Court would question Ms. Bramble. Trial counsel said he would follow up with Ms. Bramble and clarify what it was that she saw, noting that she could have been mistaken. Nothing more was placed on the record regarding the issue.

Defendant has access to Ms. Bramble. He has not submitted any information establishing that Ms. Bramble actually saw contact with the juror. As a consequence, defendant cannot show that the outcome of the trial would have been anything other than what it was. He does not meet the <u>Strickland</u> standards, and this claim fails.

CONCLUSION

For the foregoing reasons, the Court denies defendant's Rule 61 motion on the claims of ineffective assistance of counsel.

IT IS SO ORDERED.

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ROBERT W. HASSETT, III, | § | |
| | § | |
| Defendant Below- | § | No. 468, 2003 |
| Appellant, | § | |
| | § | Court Below---Superior Court |
| v. | § | of the State of Delaware, |
| | § | in and for Sussex County |
| STATE OF DELAWARE, | § | Cr. A. Nos. 00-06-0148 and 0149 |
| | § | |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: April 1, 2005
Decided: June 24, 2005

Before **STEELE**, Chief Justice, **JACOBS** and **RIDGELY**, Justices

### O R D E R

This 24th day of June 2005, upon consideration of the briefs on appeal, the parties' supplemental memoranda and the record below, it appears to the Court that:

(1)    The defendant-appellant, Robert W. Hassett, III, filed an appeal from the Superior Court's August 25, 2003 order denying his motion for a new trial pursuant to Superior Court Criminal Rule 33 and his motion for postconviction relief pursuant to Superior Court Criminal Rule 61.  We find no merit to the appeal.  Accordingly, we AFFIRM.[1]

---

[1] On May 20, 2004, we remanded this matter to the Superior Court for further proceedings in connection with Hassett's postconviction claim that his trial counsel provided

(2)    Hassett was found guilty by a Superior Court jury of Murder in the First Degree and Possession of a Deadly Weapon During the Commission of a Felony. Hassett was sentenced on the first conviction to life imprisonment and on the second conviction to 20 years imprisonment at Level V. Hassett's convictions and sentences were affirmed by this Court on direct appeal.[2]

(3)    The evidence at trial established that, in May 2000, Hassett lived in an apartment adjoining his father's mobile home near Seaford, Delaware. There was friction between Hassett and his father because of Hassett's loud music and partying. One evening, bothered by the noise from the apartment, Hassett's father told him he would have to move out. Hassett's friend, Jason Coggin, was with Hassett in the apartment at the time. According to Coggin, Hassett became angry with his father and stabbed the wall between the apartment and the mobile home with a steak knife. Later, Hassett, who had been drinking heavily and smoking marijuana, met his stepmother outside the apartment. Shortly thereafter, there were screams. Hassett returned to the apartment and told Coggin that he had killed his stepmother. The two of them carried her body into the apartment. Hassett then

---

ineffective assistance. The Superior Court scheduled an evidentiary hearing and, on October 19, 2004, filed its report following remand. Based on the evidence presented at the hearing, the Superior Court found no merit to Hassett's ineffective assistance of counsel claim. The parties then filed supplemental memoranda in this Court, which addressed the Superior Court's findings on remand.

[2] *Hassett v. State*, Del. Supr., No. 420, 2001, Steele, J. (May 15, 2002).

went into the mobile home to get some money. After threatening his father with a knife, Hassett drove away in his stepmother's car. Hassett's father called 911 and told the officer dispatched to the scene what had happened. Hassett testified at trial that it was Coggin who had killed his stepmother, but the jury did not find his story to be credible.

(4)    In this appeal, Hassett claims that the Superior Court abused its discretion by denying his motions for a new trial and for postconviction relief. In his motion for a new trial, Hassett alleged that the Superior Court should have scheduled an evidentiary hearing regarding a post-trial affidavit submitted by Coggin, which stated that he had lied on the witness stand due to coercion from the prosecutor. In his postconviction motion, Hassett alleged that the prosecutor's closing argument was improper, the trial court made erroneous evidentiary rulings, the police engaged in misconduct and his trial counsel provided ineffective assistance.[3]

(5)    The standard for determining whether a new trial should be granted based on recanted testimony is whether: a) the court is reasonably well-satisfied that the testimony given by a material witness is false; b) without the testimony the jury might have reached a different conclusion; and c) the party seeking the new

---

[3] Hassett reasserts this argument in his supplemental memorandum filed in this Court in response to the Superior Court's findings on remand.

trial was surprised when the testimony was given or did not know it was false until after the trial.[4]  Such a motion is generally decided without an evidentiary hearing unless there are exceptional circumstances such as factually specific allegations of jury tampering, third-party confessions or prosecutorial misconduct.[5]

(6)    While Coggin's affidavit states that the prosecutor coerced him into lying on the witness stand, it is not specific as to either the nature of the coercion or the nature of his alleged lies on the witness stand.  It merely states that the prosecutor told him what to say and coerced him with the threat of prison and that "everything" he said at trial about the murder was a lie.  Under these circumstances, the Superior Court was within its discretion to summarily reject the affidavit as unreliable and to deny Hassett's motion for a new trial.

(7)    Hassett next claims that the Superior Court abused its discretion by determining that the claims made in his motion for postconviction relief were procedurally barred[6] and by denying the motion on that basis.  In support of this claim, he contends, first, that it was improper for the prosecutor to insinuate in

---

[4] *Blankenship v. State*, 447 A.2d 428, 433-34 (Del. 1982).

[5] Id. at 435.

[6] Super. Ct. Crim. R. 61(i) (3); Super. Ct. Crim. R. 61(i) (4); Super. Ct. Crim. R. 61(i) (5).

closing argument that he lied and to imply that the State had superior knowledge of the facts.[7]

(8)     The prosecutor is entitled to argue all legitimate inferences of guilt that flow from the evidence presented at trial.[8]  We have reviewed the closing argument of the prosecution in this case and find nothing in it that contravenes this general principle or that constitutes improper "vouching."[9]  Hassett has failed to show that a miscarriage of justice occurred at trial.  We, therefore, find no abuse of discretion on the part of the Superior Court in finding this claim to be procedurally barred or in denying Hassett's motion for postconviction relief on this ground.

(9)     Hassett next contends that the Superior Court should have granted his motion for postconviction relief based on the trial judge's erroneous rulings.  In particular, he alleges that the trial judge erred by failing to dismiss a juror who was contacted by the victim's family during trial, by denying his request for the appointment of co-counsel, and by denying his request to dismiss his counsel.[10]

(10)   We have reviewed the record in this case and find no error on the part of the trial judge in not dismissing one of the jurors.  The record reflects that a trial

---

[7] Hassett made this claim for the first time in his postconviction motion.  Super. Ct. Crim. R. 61(i) (3).  *Although first raised here, Const. error so great as*

[8] *Hughes v. State*, 437 A.2d 559, 567 (Del. 1981).  *to warrent reverse.*

[9] *Saunders v. State*, 602 A.2d 623, 624 (Del. 1984).

[10] Hassett made this claim for the first time in his postconviction motion.  Super. Ct. Crim. R. 61(i) (3).

-5-

spectator reported to the judge that one of the jurors had been contacted by the victim's family. The judge questioned the juror and found no evidence of any contact with the victim's family. The issue was never raised again. We, likewise, find no error or abuse of discretion on the part of the trial judge in denying Hassett's requests for the appointment of co-counsel and new counsel. There is no evidence in the record suggesting that Hassett's counsel needed the assistance of co-counsel. There is likewise no factual support for Hassett's claim that the trial judge should have appointed new counsel for him. The record reflects that, prior to trial, Hassett voiced a concern that his counsel was not communicating with him. The record further reflects, however, that, once the trial judge forwarded the concern to counsel, there was no further mention of it. Hassett has failed to show that a miscarriage of justice occurred at trial. We, therefore, find no abuse of discretion on the part of the Superior Court in finding these claims to be procedurally barred or in denying Hassett's motion for postconviction relief on these grounds.

(11)  Hassett also contends that the Superior Court should have granted his motion for postconviction relief because the trial judge failed to properly instruct the jury concerning "vouching" by the prosecutor during closing argument.[11] The

---

[11] This claim was raised in Hassett's direct appeal and was decided against him. Super. Ct. Crim. R. 61(i) (4).

record reflects that the judge advised the jury that "vouching" by counsel was improper and cautioned them to disregard any personal opinion or belief offered by counsel during opening or closing statements or at any other time during trial. We find no impropriety in this instruction. Hassett has failed to show that a miscarriage of justice occurred at trial. We, therefore, find no abuse of discretion on the part of the Superior Court in finding this claim to be procedurally barred or in denying Hassett's motion for postconviction relief on this ground.

(12)    Hassett next contends that the Superior Court should have granted his motion for postconviction relief because the police engaged in misconduct.[12] The record reflects that the police acknowledged that they did not seize certain items of Coggin's clothing during their investigation of the murder and that they did not take hair samples, fingerprints or fingernail scrapings from Coggin. This, in and of itself, does not constitute misconduct. Moreover, given that the victim's blood was found on Hassett's shirt and that her DNA was found in Hassett's fingernail scrapings, Hassett has failed to show that a miscarriage of justice occurred at trial. We, therefore, find no abuse of discretion on the part of the

---

[12] Hassett made this claim for the first time in his postconviction motion. Super. Ct. Crim. R. 61(i) (3).

Superior Court in finding this claim to be procedurally barred or in denying Hassett's motion for postconviction relief on this ground.

(13) Hassett's final contention is that the Superior Court should have granted his motion for postconviction relief on the basis that his counsel provided ineffective assistance. Hassett alleges that his counsel failed to investigate his mental health status, investigate the backgrounds of the prosecution witnesses, obtain the opinion of an expert on the effects of drugs and alcohol on his behavior at the time of the murder, call appropriate witnesses and meet with him in order to fully discuss the case.

(14) Following remand of this matter to the Superior Court for further proceedings on Hassett's claim of ineffective assistance of counsel, the Superior Court scheduled an evidentiary hearing. At the hearing, the Superior Court heard testimony from Hassett's trial counsel and Dr. Allen Weiss, the prison psychiatrist who treated Hassett during the period prior to his trial. The State also placed Hassett's prison medical record into evidence. On the basis of the evidence presented, the Superior Court found that Hassett was competent to stand trial and remained competent throughout the trial, that Hassett's attorney had no obligation to order a mental health evaluation for Hassett because there was no indication at any time that Hassett was not competent, and that Hassett's attorney appropriately

-8-

did not pursue the defenses of extreme emotional distress, diminished mental capacity or temporary insanity because to do so would have required Hassett to admit to the crime, which he refused to do. The Superior Court also found no factual support for Hassett's claims that his attorney failed to investigate and interview possible defense witnesses.

(15)   In order to prevail on his claim of ineffective assistance of counsel, Hassett must show that counsel's representation fell below an objective standard of reasonableness and that, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceedings would have been different.[13]   Although not insurmountable, the Strickland standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable."[14]

(16)   The record reflects that Hassett's defense at trial was that Coggin, and not he, had murdered his stepmother. The state of Hassett's mental health and the effect of the drugs and alcohol he had ingested were simply not relevant to that defense. There was no error on the part of Hassett's counsel in that respect. As for Hassett's other contentions, we agree with the Superior Court that there is no

---

[13] *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

[14] *Flamer v. State*, 585 A.2d 736, 753 (Del. 1990).

evidence that any alleged error on the part of his counsel resulted in prejudice to him.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.[15]

BY THE COURT:

_____
Justice

---

[15] On February 22, 2005, Hassett filed a motion for an evidentiary hearing in this Court. The grounds for the motion were that the Superior Court's report following remand did not accurately reflect the testimony at the hearing. The hearing testimony has since been transcribed and this Court has reviewed the transcript in detail. We conclude that there is no reason for an evidentiary hearing in this Court and Hassett's motion is, therefore, hereby denied.