G-94

1  covering him? There was none.

2          You look at the pictures. After the
3  stabbing, she is laying on the ground. The blood is
4  pooled out in the yard. That's where the majority of
5  the blood is in this case. Admittedly, there should be
6  some blood on the knife, on the person's hands. There
7  should be at least some blood on the clothing. But
8  there is no evidence in this case to support any
9  proposition that the defense is trying to offer you
10 that a person should be soaked in blood.

11         As to the cut-up jeans, they were in custody
12 of Deborah Angelini. There is no evidence, as implied
13 by the defense, that, you know, "Maybe they are tested
14 and there was no blood on them." There is no evidence
15 that the jeans were even tested by the F.B.I.

16         The State took those jeans out and spread
17 them before you with a rubber glove, yes, and you will
18 most likely be given rubber gloves to look at any and
19 all of the evidence that you want to look at. You take
20 them out and you look at those jeans for yourself, and
21 you ask what those jeans tell you.

22         But the most important clothing is the piece
23 of clothing that was absolutely taken off of his person

EILEEN G. KIMMEL
OFFICIAL COURT REPORTER  A-30


pg 71

G-95

1  by the police and that we know now, by the defendant's
2  own admission on the stand, he was wearing when this
3  happened, and it has Sherri Hassett's blood on it.
4      Mr. Barnett talks about the flight
5  instruction. You have, in fact, been given a flight
6  instruction by the Judge, saying that it is the State's
7  allegation that the defendant fled from the scene of
8  the crime and you can consider flight as a conscious-
9  ness of guilt.
10     Mr. Barnett tries to say, "Well, look at
11 Jason." Well, ask yourselves this, ladies and
12 gentlemen. Isn't there a big difference between
13 running home and sleeping in your own bed that night
14 and what the defendant did by taking a car, fleeing out
15 of the county, stating to his mother, according to
16 Deborah Angelini's statement on that tape that you can
17 listen to as many times as you want to, "I am going to
18 go to Mexico. I am not going to jail for something I
19 didn't do"?
20     You listen to that tape. She says he said,
21 "I am not going to jail for this." There is a big
22 difference, when you talk about flight, between the
23 defendant and Jason Coggin.

A-30

EILEEN G. KIMMEL
OFFICIAL COURT REPORTER

pg 72

1          Another point that Mr. Barnett tries to make
2   to you is, "What sense would it make for the defendant
3   to cut the phone line and then tell his father not to
4   call until 7:00 a.m." to give him that much chance to
5   run away from this thing?  What sense would that make
6   if he knows he already cut the phone line?
7          Well, from the evidence in this case, if you
8   just apply your common sense and look at what happened,
9   it makes a lot of sense, because you know that that
10  wasn't the only phone in the neighborhood.  In fact,
11  despite the phone line being cut, George did make a
12  call before 7:00 a.m.  He made a call to 911 at 1:14
13  and fifty seconds in the morning.
14         So even though you have one base covered by
15  cutting a phone line, you know that there are other
16  phones in the neighborhood.  Doesn't it make sense to
17  say, "Don't call.  Don't call"?  There is nothing
18  illogical or inconsistent about that conduct, combined
19  with that statement to his father, George.
20         Mr. Barnett, on another topic, says that
21  George can't have it both ways.  Sometimes George says
22  Willie and Jason.  Sometimes he says "they".  Well, he
23  (indicating) can't have it both ways.  That's for sure.

G-97

1  If his defense is, "We both did it," that is no defense
2  to him. Regardless of the extent of what you
3  ultimately decide Jason's involvement was, that is no
4  defense to him if Jason was more involved.
5       But the evidence we are going to go over here
6  will show that Jason was not more involved. He was at
7  the wrong place at the wrong time with the wrong
8  person. But that is no defense to the defendant. It
9  is no defense, if you listen to that tape, that Deborah
10 Angelini says that he said, "Jason did it, too." That
11 is no defense to Robert Hassett, 3rd.
12      Mr. Barnett goes to another topic. He talks
13 about other impressions or partial impressions of
14 footwear on the tile, and we don't know what that was.
15 Well, we know it wasn't blood, but we know it is other
16 footwear impressions and we don't know whose they are.
17      What is so important about that? This is the
18 defendant's apartment. If the State had the
19 defendant's footwear impression or one that
20 corresponded in design and approximate size to the
21 defendant's footwear on that tile floor, it would mean
22 nothing. He lives there. If we had Jason's, he is a
23 visitor there. It means nothing.

A-30

EILEEN G. KIMMEL
OFFICIAL COURT REPORTER

Pg 75

1          What is important is this footwear
2   impression, which the expert described as matching in
3   design and size to the First Down right boot that the
4   defendant had on his feet and he admitted he had on his
5   feet when he took the stand, is in what the F.B.I. has
6   determined to be Sherri Hassett's blood.  There should
7   be lots of footwear impressions in that house, but what
8   is important about that piece is it is in the blood of
9   Sherri Hassett.  That is why that is important, and
10  that is why these other impressions that he wants to
11  talk about are not important.
12          Mr. Barnett starts talking briefly about the
13  defendant's testimony and saying to you, "Well, he said
14  he was upset, and when you are upset, you can't
15  explain, you know, what you are going to do."  Well,
16  the Judge has told you that when deciding what he
17  intended to do and his state of mind -- and you can
18  read these instructions -- you can look at what a
19  reasonable person would do under those circumstances.
20          Your ultimate decision is going to be what he
21  thought, but you can look at what a reasonable person
22  would do.  Do you think, when you are looking at the
23  defendant's testimony, that a reasonable person would

G-99

1  sit there on the steps while the stepmother whom he
2  says he loves is getting stabbed over twenty times and
3  not lift a finger?  Because he is upset or in shock, do
4  you think that a reasonable person, when asked to help
5  pull this knife out of his loved one's chest, that he
6  would go about the task of helping to pull the knife
7  out of the chest?
8              MR. BARNETT:  Objection, Your Honor.  That is
9  beyond the scope of my cross.
10             THE COURT:  I will see counsel at sidebar.
11             (Whereupon, counsel approached the bench
12      and the following proceedings were had:)
13             THE COURT:  Yes?  Your comment was --
14             MR. ADKINS:  I am about to list maybe seven
15  or eight things that he said he did.
16             THE COURT:  "He" being?
17             MR. ADKINS:  The defendant.  That he said he
18  did.  I am going to ask the jury to measure that as to
19  whether a reasonable person would do that.  It is in
20  rebuttal to Mr. Barnett's comment.
21             He said something to the effect, "I am not
22  going to go over the defendant's entire testimony, but
23  look at the testimony of the defendant, and he told you

EILEEN G. KIMMEL
OFFICIAL COURT REPORTER   

Case 1:05-cv-00609-JJF    Document 4-3    Filed 08/17/2005    Page 7 of 20

G-100

1  that he was upset. You don't know what you are going
2  to do when you are upset." I am saying, "Well, are you
3  going to do this? Are you going to do this?"
4          THE COURT: You also said in your argument to
5  the jury to have a comparison of the testimony between
6  Jason and your client, as well.
7          MR. BARNETT: I understand that.
8          THE COURT: You also touched upon what the
9  defendant claimed was his version of what happened that
10 night. So why is it that the prosecution can't, in
11 rebuttal, go through these points?
12         MR. BARNETT: I think they can do that on
13 direct, but I think in rebuttal -- I referred to one
14 statement, "You don't know what you do when you are
15 upset." If the State is going to go through every
16 single thing he said on his testimony that I did not
17 bring up, then I think that is beyond the scope of
18 cross.
19         THE COURT: You mean your statements? Beyond
20 the scope of your argument?
21         MR. BARNETT: Yes, beyond the scope of my
22 argument to the jury. If the Court is going to let him
23 do that, he can go through my client's entire testimony

EILEEN G. KIMMEL
OFFICIAL COURT REPORTER  A-30  pg 77

G-101

1  based on that, and I don't think he can.

2          I specifically limited it to that one quote,
3  and I asked them to compare my client's testimony and
4  Jason's. That is not rebuttal. He is not comparing my
5  client's testimony to Jason's.

6          MR. ADKINS: If he didn't bring up the
7  defendant's testimony, then I am stuck on the rebuttal.
8  But when he brought up the defendant's testimony, I
9  should be -- especially when he says that he said,
10 "When you are upset, you don't know what you are going
11 to do," and I am trying to point out, "You are not
12 going to do this," and "You are not going to do this,
13 are you, by the fact that you are upset?"

14         THE COURT: You brought this into the picture
15 by talking about this in your statement to the jury,
16 Mr. Barnett, so I will allow the prosecution to do
17 that.

18         While you are up here, when the State is
19 done, I am going to give an instruction to the effect
20 that, "Of course, the defendant, who was a witness in
21 this case, was here and heard the testimony of other
22 witnesses, but he has every right to be here, too. You
23 should take everything into consideration in deter-

EILEEN G. KIMMEL
OFFICIAL COURT REPORTER   A-38 pg 78

1  mining credibility, but there is nothing untoward about
2  the defendant's being present when other witnesses are
3  testifying."
4           MR. ADKINS:  I didn't mean to imply there
5  was.  It is just a fact.
6           THE COURT:  I will do it out of an abundance
7  of caution.  I could do it at the close of the
8  arguments, or I can do it now, if Mr. Barnett wants me
9  to.  There was no objection.
10          MR. BARNETT:  I understand there was no
11 objection.  I was going to object at the end.  The
12 implication is that my defendant is lying.  Since we
13 are here, I didn't object at that point, but --
14          MR. ADKINS:  I didn't say he was lying.  I
15 think we have a Supreme Court decision that says that
16 that is fair game.
17          THE COURT:  We will put it right on the
18 record.  The Supreme Court case is Agard.  The Supreme
19 Court case was decided March 6th, 2000.  For purposes
20 of the United States Supreme Court and how it views
21 arguments of this nature, it was found not to be a
22 constitutional violation for a comment to be made on
23 the testimony by defendants who take the stand at the



EILEEN G. KIMMEL
OFFICIAL COURT REPORTER



G-103

1   end after having heard everything in advance.
2           However, the Supreme Court made it plain
3   that, as a matter of trial practice, trial judges may
4   view it differently in terms of issuing cautionary
5   instructions.  There was a cautionary instruction
6   suggested in Footnote No. 5 of the opinion, from which
7   I am taking this language.
8           So it is just out of an abundance of caution
9   for trial practice that I am doing this.  So I will do
10  that now since everybody is up here.  Then I will allow
11  Mr. Adkins to concisely conclude his rebuttal, as he
12  promised the jury, so we can move on.
13          Your objection is noted and overruled.  I
14  think it is fair game for what has been presented to
15  the jury.
16          (Whereupon, counsel returned to the trial
17      table and the following proceedings were had:)
18          THE COURT:  Before we proceed with the
19  continuation of the argument, concerning an earlier
20  portion of the rebuttal argument on the subject of the
21  defendant's testifying and having been present in court
22  and having heard some of the preceding evidence, I am
23  instructing you as follows:

EILEEN G. KIMMEL
OFFICIAL COURT REPORTER

1    Of course, the defendant, who was a witness
2    in this case, was here during the testimony of other
3    witnesses, but he has every right to be here, too. You
4    should take everything into consideration in deter-
5    mining credibility, but there is nothing untoward about
6    the defendant's being present when other witnesses are
7    testifying.
8         MR. ADKINS: As I was saying, ladies and
9    gentlemen, you are entitled to ask yourselves, on the
10   basis of this evidence, whether it was reasonable for
11   him to sit there on that step when he is saying he is
12   seeing a loved one of his getting stabbed that many
13   times and not lift a finger to do anything about it.
14        You may ask whether it is reasonable for him
15   to then get over top of her and help pull a knife out
16   of her chest. Is it reasonable for him to then go
17   along with taking the body into his apartment? Is it
18   reasonable what he is talking about in his testimony,
19   that Mr. Barnett mentioned to you, that he was upset?
20   Or once he gets that knife, so he says, in his
21   possession, to give it right back to the person he says
22   is the murderer? Does it add up?
23        Mr. Barnett also says, "Give the defendant

EILEEN G. KIMMEL
OFFICIAL COURT REPORTER

G-105

*[handwritten margin notes: "he didn't know that" "wasn't thinking about that"]*

1   some credit" basically for not committing more crimes.
2   Well, he didn't resist arrest when the police were
3   there to pick him up.  He didn't refuse to submit the
4   specimens they were collecting in the face of a Court
5   Order.  What kind of argument is that?  Give him
6   credibility for not committing more crimes?
7        Mr. Barnett also emphasizes the burden or
8   proof of beyond a reasonable doubt.  Certainly, the
9   burden of proof is beyond a reasonable doubt, and you
10  should read the instruction that the Judge has already
11  read to you when you get back in the jury deliberation
12  room.
13       That instruction says, "There are few things
14  in this world that we know with absolute certainty.
15  Therefore, in criminal cases, the law does not require
16  proof that overcomes every possible doubt.  Proof
17  beyond a reasonable doubt is proof that leaves you
18  firmly convinced of the defendant's guilt.  Therefore,
19  based upon your consideration of the evidence, if you
20  are firmly convinced that he is guilty, you find him
21  guilty."  That is all that reasonable doubt is.
22       Mr. Barnett also briefly mentioned that in
23  this case, according to the Judge's instructions, you

A-30

EILEEN G. KIMMEL
OFFICIAL COURT REPORTER



F-103

ROBERT W. HASSETT, III - CROSS

1   accused of it.  He told me, you leave.  I wouldn't --
2   I still thought I would get accused of it either way.
3       Q.   Well, if you saw Jason do this and you didn't
4   do anything bad towards your father and you didn't do
5   it, why are you going to get accused?
6       A.   Because I seen it happen.
7       Q.   So witnesses who see things happen you think
8   get accused of doing it?
9       A.   I have been accused of things -- I have seen
10  other things happen and I get accused.  Why would it
11  be different now?
12      Q.   You have sat here throughout this trial and
13  listened to every single word that every State's
14  witness has said, haven't you?
15      A.   Yes.
16      Q.   Have you read the transcripts of their taped
17  statements?
18      A.   Yes.
19      Q.   You done all that too?
20      A.   Yeah.
21      Q.   You reviewed the physical evidence in the
22  case, correct?
23      A.   Yeah.

A-31

pg 83

DAVID WASHINGTON
Official Court Reporter

ROBERT W. HASSETT, III - CROSS

1   Q.   All of those things?

2   A.   Yes.

3   Q.   Well, where did you go once you got in the
4   car?

5   A.   I drove -- I was going up north to my mom's.

6   Q.   Well, did you know -- did you drive up to
7   your mom's apartment there in the parking lot?

8   A.   No.

9   Q.   Where did you go?

10  A.   I started to pass out behind the wheel.  And
11  as I did, I got myself together enough to pull off on
12  the side of a back road and park the car.

13  Q.   In the bushes, in trees, back by a silo?

14  A.   It wasn't in the bushes and trees.  I pulled
15  into a little like drive and parked it back behind the
16  little barn.

17  Q.   You are talking five or ten feet off the road
18  or 50 feet?

19  A.   I don't know how far it was.  I don't know
20  the distance of it.  I didn't get out with a tape
21  measure and mark it.

22  Q.   Could you see the road from where you parked
23  the vehicle in the trees?

A-31

DAVID WASHINGTON
Official Court Reporter



```
                    SUPERIOR COURT CRIMINAL DOCKET                    Page
                         ( as of   01/22/2003 )

State of Delaware v.  ROBERT W HASSETT                       DOB: 09/06/1980
State's Atty: JAMES W ADKINS , Esq.           AKA:
Defense Atty: THOMAS D BARNETT , Esq.


         Event
No.      Date         Event                                     Judge
-------------------------------------------------------------------------
              DEFENSE RESPONSE                                      10/02/00
         (B)  ALL MOTIONS (EXCLUDING FBI MATERIAL) FILED BY         03/02/01
         (C)  STATUS CONFERENCE @ 9:00 A.M.                         03/09/01
         (D)  TWO-WEEK JURY TRIAL                                   05/08/01
10       07/28/2000                                  STOKES RICHARD F.
         LETTER FROM COURT, TO THOMAS BARNETT.  RE:  COURT'S POLICY IS NOT TO
         APPOINT CO-COUNSEL.
11       07/28/2000
         LETTER FROM THOMAS BARNETT, TO COURT.  RE:  REQUESTING APPOINTMENT OF
         CO-COUNSEL.
14       08/31/2000
         DISCOVERY RESPONSE AND STATE'S RECIPROCAL DISCOVERY REQUEST FILED BY
         JAMES ADKINS.
15       09/05/2000
         MOTION FOR DISCOVERY FILED BY DEFENDANT/SENT FILE TO CHAMBERS ON
         9/6/00.
17       09/07/2000                                  STOKES RICHARD F.
         LETTER FROM COURT, TO DEF.  RE:  DEF.'S MOTION FILED ON 9/5/00 HAS
         BEEN FORWARDED TO MR. BARNETT FOR ANY ACTION DEEMED APPROPRIATE BY
         HIM.
         09/11/2000
         SUPPLEMENT TO DISCOVERY RESPONSE FILED BY AG ADKINS
18       10/20/2000
         DEFENDANT'S LETTER FILED.
         TO THOMAS BARNETT RE:  ASKING FOR A REPLY / FORWARDED TO THOMAS
         BARNETT ON 10/24/00.
19       10/25/2000
         MOTION FOR DISBURSEMENT OF FUNDS FILED BY THOMAS BARNETT / MOTION AND
         FILE FORWARDED TO CHAMBERS ON 10/30/00.
20       10/27/2000
         DEFENDANT'S LETTER FILED.
         TO COURT RE: REQUESTING A COPY OF DOCKET SHEET/MAILED TO DEFENDANT ON
         10/31/00.
21       11/14/2000
         LETTER FROM COURT, TO MANAGER OF FISCAL SERVICES, IN RE: TO COURT REOP
         REPORTER BEING PAID.
22       11/14/2000
         MOTION TO DISQUALIFY COUNSEL FILED BY DEFENDANT/FORWARDED A COPY TO
         ATTORNEY THOMAS BARNETT & SENT FILE TO CHAMBERS ON 11/16/00.
24       11/14/2000
         LETTER FROM DEBORAH ANGELINI TO JUDGE STOKES
         RE: REQUESTING NEW ATTORNEY.
```



A-32

Pg85

<u>Superior Court of Sussex County
for the State of Delaware</u>

STATE OF DELAWARE     *
    *
V.     *
    *    No. <u>S00-06-0148 & 0149</u>
<u>Robert W. Hassett 3rd</u>     *    I.D. #<u>0005011315</u>
Defendant     *

### MOTION TO DISQUALIFY COUNSEL

**COMES NOW,** <u>Robert Hassett</u>, pro-se, and move this Honorable Court for an order disqualifying the Public Defender's Office from acting as appeal counsel for defendant. This motion is made on grounds that such representation of the Public Defender would represent a conflict of interest in the following manner:

<u>The lawyer appointed has a problem talking with young people. And me being a young person feels that if Mr. Barnett can not communcate with me, He can not defend me.</u>

Continued representation would be prejudicial, giving rise to the denial of effective assistance of counsel pursuant to 29 Del C. 4602 (2) and the Sixth Amendment of the United States Constitution.

Respectfully Submitted,

<u>Robert W. Hassett 3rd</u>
<u>Robert W. Hassett 3rd</u>

Dated: <u>11-12-00</u>

A-33



## CERTIFICATE OF SERVICE

I, __Robert W. Hassett 3rd__, hereby certify that I have served a true and correct copy of the attached motion upon the following party, on the __12__ day of __Nov__, 20__00__.

**************************************************

** Circle the Department of Justice you are serving **

| | | |
|---|---|---|
| Deputy Attorney General | Deputy Attorney General | Deputy Attorney General |
| Department of Justice | Department of Justice | Department of Justice |
| 820 North French Street | Sykes Building | 114 East Market Street |
| Wilmington, DE 19801 | 45 the Green | Georgetown, DE 19947 |
| | Dover, DE 19901 | |

__11-12-00__
Date Signed

__Robert W. Hassett 3rd__
Signature of Movant (Notarization not required)

A-33

pg 82

4-29-01

Dear Honorable Judge Stokes,

My name is Robert William Hassett 3rd. I have wrote to you before about getting a new lawyer. And now I am writing you a final time. My lawyer Mr. Thomas Barnett has violated the client-lawyer Relationship, on different accounts. For example he has violated Rule 1.3 and 1.4 (a) and (b) of the client-lawyer Relationship, which pretains to diligence and duty to communicate. He has failed to give me all of the police report, and the rule 16 discloser. He has failed to discuss dirrectives in litigation also.
  Which is failure in Due Process. These things alone is reason enough for dismissal. The attorney General once said that everyone is able to have proper representation. With the actions my lawyer has shown I am not getting that proper representation. So your honor I ask a final time to re-appoint me a new lawyer. Because there is no way I can go to trial with a lawyer who is not and can not represent me properly. Thank you for your time and patience in this matter. And may the lord above be

pg 88

with you and your family.

Sincerely,
*Robert W. Hassett 3rd*
Robert W. Hassett 3rd.

A-34

pg 89

SUPERIOR COURT
OF THE
STATE OF DELAWARE

RICHARD F. STOKES
JUDGE

P.O. BOX 746
COURTHOUSE
GEORGETOWN, DE 19947

April 9, 2001

Robert Hassett III
SBI# 00337363
Sussex Correctional Institution
P.O. Box 500
Georgetown, DE 19947

      RE:  Def. ID# 0005011315

Dear Mr. Hassett:

    As you are represented by counsel, your letter dated March 31, 2001 has been forwarded to your attorney, Mr. Barnett, for any action deemed appropriate by him.

    Absent a statement by Mr. Barnett of a conflict of interest in representing you, the Court will not appoint new counsel to your case. You may, of course, discharge Mr. Barnett and obtain another attorney at your own expense.

                               Yours very truly,

                               Richard F. Stokes

kjt
xc:  Prothonotary
     Thomas D. H. Barnett, Esquire (w/enc.)

A-35

pg 90