IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT W. HASSETT, III, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civ. Act. No. 05-609-JJF |
| | : | |
| RICHARD KEARNEY, Warden, and | : | |
| CARL C. DANBERG, Attorney General | : | |
| of the State of Delaware, | : | |
| | : | |
| Respondent. | : | |

Robert W. Hassett.  <u>Pro</u> <u>se</u> Petitioner.

Elizabeth R. McFarlan, Deputy Attorney General of the DELAWARE
DEPARTMENT OF JUSTICE, Wilmington, Delaware.  Attorney for
Respondent.

**MEMORANDUM OPINION**

September 18, 2006
Wilmington, Delaware

**Farnan, District Judge**

Pending before the Court is an Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition") filed by Petitioner Robert W. Hassett, III ("Petitioner"). (D.I. 2.) For the reasons discussed, the Court will dismiss the Petition and deny the relief requested.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In May 2000, Petitioner lived in an apartment adjoining his father's mobile home. There was friction between Petitioner and his father because of Petitioner's loud music and partying. One evening, Petitioner and his friend, Jason Coggin, were in Petitioner's apartment. Bothered by the noise from the apartment, Petitioner's father told Petitioner that he would have to move out. According to Coggin, Petitioner became angry with his father and stabbed the wall between the apartment and the mobile home with a steak knife. Hassett v. State, 897 A.2d 52 (Table), 2005 WL 1653632, at *1 (Del. June 24, 2005).

Petitioner drank heavily and smoked marijuana throughout the evening. Later that night, Petitioner met his stepmother outside the apartment, and screams were heard by witnesses. When Petitioner returned to the apartment, he told Coggin that he had killed his stepmother. The two of them carried her body into the apartment, and Petitioner went into the mobile home to get money. Petitioner threatened his father with a knife, and drove away in

1

his stepmother's car. Petitioner's father then called the police.

During a June 2001 jury trial in the Delaware Superior Court, Petitioner testified that he did not kill his stepmother, but rather, that Coggin killed her. Id. The jury convicted Petitioner of first degree murder and possession of a deadly weapon during the commission of a felony. See Hassett v. State, 877 A.2d 52 (Table), 2005 WL 1653632 (Del. June 24, 2005). The Superior Court sentenced Petitioner to life imprisonment for the first degree murder conviction, and 20 years imprisonment at Level V for the weapon conviction. Id. The Delaware Supreme Court affirmed Petitioner's convictions and sentences. Hassett v. State, 797 A.2d 1206 (Table), 2002 WL 1009861 (Del. May 15, 2002).

Petitioner filed a motion for a new trial pursuant to Delaware Superior Court Rule 33 and a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61. The Superior Court denied the motions, and Petitioner appealed. On post-conviction appeal, the Delaware Supreme Court remanded the matter to the Superior Court for further proceedings with respect to the ineffective assistance of counsel claim asserted in Petitioner's Rule 61 motion. The Superior Court held an evidentiary hearing, and denied Petitioner's ineffective assistance of counsel claim as meritless. The parties then filed

2

supplemental memoranda in the Delaware Supreme Court, and after addressing the Superior Court's findings on remand, the Delaware Supreme Court affirmed the Superior Court's denial of the two motions.  Hassett, 2005 WL 1653632.

Petitioner filed the instant Petition in August 2005.  (D.I. 2.)  Respondent filed an Answer, asserting that the Petition should be dismissed.  (D.I. 18.)

## II.  GOVERNING LEGAL PRINCIPLES

### A. EXHAUSTION AND PROCEDURAL DEFAULT

Absent exceptional circumstances, a federal court cannot review a habeas petition unless the petitioner has exhausted all means of available relief for his claims under state law.  28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842-44 (1999); Picard v. Connor, 404 U.S. 270, 275 (1971).  A petitioner satisfies the exhaustion requirement by "fairly presenting" the substance of the federal habeas claim to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the state courts to consider it on the merits.  See Duncan v. Henry, 513 U.S. 364, 365 (1995); Castille v. Peoples, 489 U.S. 346, 351 (1989); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). If a petitioner presents unexhausted habeas claims to a federal court, but state procedural rules bar further state court review of those claims, the federal court will excuse the failure to

3

exhaust and treat the claims as exhausted. Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000); Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001); see Teague v. Lane, 489 U.S. 288, 297-98 (1989). Although deemed exhausted, such claims are considered procedurally defaulted. Coleman v. Thompson, 501 U.S. 722, 749 (1991); Lines, 208 F.3d at 160.

A federal court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Coleman, 501 U.S. at 750-51; Caswell v. Ryan, 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause for a procedural default, the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, the petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id. at 494.

Alternatively, if the petitioner demonstrates that a "constitutional violation has probably resulted in the conviction

4

of one who is actually innocent," then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. Murray, 477 U.S. at 496; Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wenger v. Frank, 266 F.3d 218, 224 (3d Cir. 2001). Actual innocence means factual innocence, not legal insufficiency, and the miscarriage of justice exception applies only in extraordinary cases. Bousley v. United States, 523 U.S. 614, 623 (1998); Murray, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial," showing that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt. Hubbard v. Pinchak, 378 F.3d 333, 339-40 (3d Cir. 2004).

## B. STANDARD OF REVIEW

If the state's highest court adjudicated a federal habeas claim on the merits, then a federal court must review the claim under the deferential standard contained in 28 U.S.C. 2254(d). Section 2254(d) only permits federal habeas relief if the state court's decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision is an unreasonable determination of the facts based on

5

the evidence adduced at trial.  28 U.S.C. § 2254(d)(1),(2);

Williams v. Taylor, 529 U.S. 362, 412 (2000);  Appel v. Horn, 250

F.3d 203, 210 (3d Cir. 2001).  When reviewing a habeas claim, a

federal court must presume that the state court's determinations

of factual issues are correct.  28 U.S.C. § 2254(e)(1).  This

presumption of correctness applies to both explicit and implicit

findings of fact, and is only rebutted by clear and convincing

evidence to the contrary.  28 U.S.C. § 2254(e)(1);  Campbell v.

Vaughn, 209 F.3d 280, 286 (3d Cir. 2000);  Miller-El v. Cockrell,

537 U.S. 322, 341 (2003)(stating that the clear and convincing

standard in § 2254(e)(1) applies to factual issues, whereas the

unreasonable application standard of § 2254(d)(2) applies to

factual decisions).

## III.   DISCUSSION

The Petition asserts the following claims for relief: (1)

the state prosecutor coerced a witness into providing false

testimony; (2) the state prosecutor improperly commented on

Petitioner's state of mind during his closing argument; (3) trial

counsel provided constitutionally ineffective assistance by: a)

failing to investigate Petitioner's mental health issues and

failing to obtain the testimony of a drug expert regarding the

effect of drugs on Petitioner's behavior; b) failing to

investigate the State's witness; c) failing to present the issue

of witness misconduct to the jury; and d) only meeting with

6

Petitioner on three occasions; (4) the trial court erred by
failing to find prejudice due to alleged juror contact with a
member of the victim's family; (5) the trial court erred by
failing to declare a mistrial on the basis of the prosecutor's
improper rebuttal argument; and (6) the trial court improperly
denied Petitioner's request for co-counsel and his motion to
dismiss counsel.  (D.I. 2, 3.)

Respondents filed an Answer, asserting that the Petition
should be dismissed.  (D.I. 18.)  Petitioner filed a Reply,
essentially re-asserting the substantive claims contained in his
Petition and also addressing Respondent's contention that several
claims are procedurally barred from federal habeas review.  (D.I.
22.)  The Court has considered Petitioner's Reply in reaching its
conclusions below.

## A.  Prosecutorial Misconduct Claim: Coercion Of Witness

Petitioner filed a motion for new trial in the Superior
Court, arguing that the prosecutor committed misconduct by
coercing Jason Coggin to falsely testify against Petitioner at
trial.  Petitioner supported his motion with Coggins' post-trial
affidavit stating that Coggin lied on the witness stand.  The
Superior Court denied the motion without conducting an
evidentiary hearing after determining that Coggin's nebulous
statements in the affidavit did not recant his testimony or
specify how he lied.  The Superior Court also stated that "Coggin

7

must submit a document that specifies every false statement he made, the 'true' version of events, and what the prosecutor threatened." State v. Hassett, 2003 WL 21999594, at *2 (Del. Super. Ct. Aug. 25, 2003). Petitioner appealed that denial, arguing that the Superior Court should have conducted an evidentiary hearing regarding the affidavit. The Delaware Supreme Court affirmed the Superior Court's decision, stating that the Superior Court "was within its discretion to summarily reject the affidavit as unreliable and to deny Hassett's motion for a new trial" because Coggin's affidavit was "not specific as to either the nature of the coercion or the nature of his alleged lies on the witness stand." Hassett, 2005 WL 1653632, at*2.

In his first claim, Petitioner contends that the Delaware state courts erroneously concluded that Coggin's affidavit was too vague and nonspecific to warrant a new trial. Therefore, the issue before the Court is whether the Delaware Supreme Court's decision involved an unreasonable determination of the facts based on the evidence.

On habeas review, a state court's conclusion regarding credibility issues constitutes a factual determination entitled to a presumption of correctness unless the petitioner provides clear and convincing evidence to the contrary. Sumner v. Mata, 449 U.S. 539, 555 (1981). Here, the Delaware courts denied Petitioner's argument regarding the alleged witness coercion only

8

after determining that the assertions contained in Coggin's
affidavit were not credible.  Petitioner has not provided any
evidence to rebut the presumption that the factual findings are
correct.  Thus, the Court concludes that the Delaware Supreme
Court's denial of Petitioner's witness coercion claim was not
based on an unreasonable determination of the facts in light of
the evidence presented in the state court proceeding.
Accordingly, the Court concludes that the claim does not warrant
relief under § 2254(d)(2).

## B.  Prosecutorial Misconduct Claim: Improper Inference That Petitioner Tailored His Testimony To The Evidence

The prosecutor made the following comments about Petitioner

during his rebuttal argument:

Think about it, ladies and gentlemen.  He admitted to you on
the stand - he has sat here throughout the entire trial.
Before he takes the stand, he has been able to listen to
what every single witness in the State's case said.  He has
been provided with and looked at all transcripts of all the
State's witnesses.  He has been provided to view all the
physical evidence that the State has against him.  Then he
takes the stand and explains it.  Does that take a rocket
scientist?

(D.I. 20, Appellant's Op. Br. on Appeal, Hassett v. State,

No.420, 2001, at B-9 to B-10.)  The prosecutor continued with his

rebuttal until defense counsel objected to a new statement, at

which time the following sidebar discussion occurred:

COURT: While you are up here, when the State is done, I am
going to give an instruction to the effect that, "Of course,
the defendant, who was a witness in this case, was here and
heard the testimony of other witnesses, but he has every
right to be here, too.  You should take everything into

9

consideration in determining credibility, but there is nothing untoward about the defendant's being present when other witnesses are testifying.

PROSECUTOR: I didn't mean to imply there was.  It is just a fact.

COURT: I will do it out of an abundance of caution.  I could do it at the close of the arguments, or I can do it now, if [defense counsel] wants me to.  There was no objection.

DEFENSE COUNSEL: I understand there was no objection.  I was going to object at the end.  The implication is that my defendant is lying.  Since we are here, I didn't object at that point, but . . .

PROSECUTOR: I didn't say he was lying.  I think we have a Supreme Court decision that says that that is fair game.

COURT: We will put it right on the record.  The Supreme Court case is Agard.  The Supreme Court case was decided March 6th, 2000.  For purposes of the United States Supreme Court and how it views arguments of this nature, it was found not to be a constitutional violation for a comment to be made on the testimony by defendants who take the stand at the end after having heard everything in advance.

However, the Supreme Court made it plain that, as a matter of trial practice, trial judges may view it differently in terms of issuing cautionary instructions.  There was a cautionary instruction suggested in Footnote No. 5 of the opinion, from which I am taking this language.

Id. at B-19 to B-21.

In his second claim, Petitioner contends that the trial court's cautionary instruction regarding the prosecutor's implication that Petitioner's testimony was tailored to the evidence at trial was insufficient and that the Superior Court should have declared a mistrial.  Petitioner raised this issue to the Delaware Supreme Court on direct appeal, and the Delaware Supreme Court affirmed the Superior Court's decision to give a

10

cautionary jury instruction instead of declaring a mistrial.
Accordingly, the Court must determine if the Delaware Supreme
Court's decision is either contrary to, or an unreasonable
application of, clearly settled Supreme Court precedent.

The clearly established Supreme Court precedent governing
Petitioner's claim is Portuondo v. Agard, 529 U.S. 61, 73 (2000).
In Portuondo, the Supreme Court held that "[a]llowing comment
upon the fact that a [testifying criminal] defendant's presence
in the courtroom provides him with a unique opportunity to tailor
his testimony is appropriate – and indeed, given the inability to
sequester the defendant, sometimes essential – to the central
function of the trial, which is to discover the truth."
Portuondo, 529 U.S. at 73.

In Petitioner's case, the Delaware Supreme Court affirmed
the Superior Court's judgment "on the basis of and for the
reasons set forth in Portuondo v. Agard, 529 U.S. 61 (2000)."
Hassett, 797 A.2d at 1206. Therefore, the state court's decision
is not contrary to clearly established Federal law. See
Williams, 529 U.S. at 406 ("[A] run-of-the-mill state-court
decision applying the correct legal rule from [Supreme Court]
cases to the facts of a prisoner's case [does] not fit
comfortably within § 2254(d)(1)'s 'contrary to' clause").
Moreover, the prosecutor's statements concerned Petitioner's
credibility as a witness to the events surrounding the crime, and

11

were therefore in accordance with the Supreme Court's
"longstanding rule that when a defendant takes the stand, his
credibility may be impeached and his assailed like that of any
other witness." Portuondo, 529 U.S. at 69. Thus, the Court also
concludes that the Delaware Supreme Court's decision did not
involve an unreasonable application of Portuondo. Accordingly,
the Court will deny the instant claim under § 2254(d)(1).

## C. Ineffective Assistance Of Counsel Claims

Petitioner asserts the following four examples of trial
counsel's ineffective assistance: (a) counsel failed to
investigate Petitioner's mental health or obtain the testimony of
a drug expert regarding the effect of any drugs on Petitioner's
behavior; (b) counsel failed to investigate the State's witnesses
and he did not prepare his cross-examination of those witnesses;
(c) counsel did not present the issue of witness misconduct to
the jury; and (d) counsel only met with Petitioner on three
occasions. The Delaware Supreme Court denied these claims on
post-conviction appeal as meritless. Consequently, the Court
must review the claims under § 2254(d)(1).

The clearly established Supreme Court precedent governing
ineffective assistance of counsel claims is the two-pronged
standard enunciated by Strickland v. Washington, 466 U.S. 668
(1984) and its progeny. See Wiggins v. Smith, 539 U.S. 510
(2003). Under the first Strickland prong, a petitioner must

12

demonstrate that "counsel's representation fell below an
objective standard of reasonableness," with reasonableness being
judged under professional norms prevailing at the time counsel
rendered assistance. Strickland, 466 U.S. at 688. Under the
second Strickland prong, a petitioner must demonstrate "there is
a reasonable probability that, but for counsel's error the result
would have been different." Id. at 687-96. A reasonable
probability is a "probability sufficient to undermine confidence
in the outcome." Id. at 688. Although not insurmountable, the
Strickland standard is highly demanding and leads to a "strong
presumption that the representation was professionally
reasonable." Strickland, 466 U.S. at 689.

Here, the Superior Court and the Delaware Supreme Court
correctly identified Strickland as the proper standard and
analyzed all of Petitioner's ineffective assistance of counsel
claims within its framework. Therefore, the Delaware Supreme
Court's denial of these four claims was not contrary to
Strickland. Williams, 529 U.S. at 406.

The Court must also determine whether the state courts'
analysis of the claims constituted an unreasonable application of
Strickland. The Court discusses each allegation of ineffective
assistance below.

13

a.   Failure To Conduct Mental Health Investigation
     And Obtain Expert Testimony Regarding Effect
     Of Drugs On Behavior

Petitioner contends that trial counsel should have

investigated his mental health status to determine if any

possible defenses - - such as extreme emotional distress - -

could have been presented at trial.  He also argues that counsel

should have retained an expert to ascertain how drugs and alcohol

affected his behavior at the time of the murder.

Petitioner presented these same claims to the Delaware

Superior Court in his Rule 61 motion.  Counsel filed a Rule 61

affidavit in response, stating that:

Counsel did speak with [Petitioner] and his mother regarding
his mental condition and reviewed documents provided by
other family members.  Counsel also wrote to Dr. Sibley
regarding the possible mental health issues.  However, when
counsel explained to [Petitioner] that he would have to
admit to stabbing his stepmother in order to raise the
defenses he refused to do so and counsel was left with the
sole defense that Jason Coggin had killed Sherry [sic]
Hassett.

Hassett, 2004 WL 2419139, at *4.  With respect to Petitioner's

complaint regarding counsel's failure to obtain expert testimony

about the effect of drugs and alcohol on Petitioner's behavior,

counsel explained that:

Evidence of voluntary intoxication is not admissible under
Rule 401(c) as defense.  Further, [Petitioner] would have
had to have admitted he stabbed Mrs. Hassett which he
refused to do.  Counsel sees no way such a defense could be
raised when [Petitioner] adamantly denied killing his
stepmother. Therefore, any defense of this type was not
available to counsel.

14

Id. at *5. Counsel also testified that he did contact a psychologist regarding possible mental health issues, but that Petitioner's refusal to admit stabbing his stepmother foreclosed counsel's ability to pursue a mental health defense. Id.

After reviewing Petitioner's medical records and hearing from Petitioner's counsel and physician during the Rule 61 evidentiary hearing, the Superior Court concluded that Petitioner's claims regarding counsel's failure to investigate possible mental health defenses and drug defenses were meritless. Specifically, the Superior Court judge stated:

> I make the following findings of fact based on the evidence. Defendant was competent from December 2000 through the trial. Furthermore, there was nothing to indicate to [counsel] that defendant was suffering any active symptoms of mental illnesses from December, 2000 through his trial in 2001. There was no basis for [counsel] to have defendant undergo a mental evaluation to determine his competency. There was nothing to indicate that defendant was anything but competent during this time period.

Hassett, 2004 WL 2419139, at *3.

Under Delaware law, a defense of extreme emotional distress or temporary insanity requires a defendant to admit performing the underlying crimes. See Del. Code Ann., tit. 11, § 641 ("the fact that the accused intentionally caused the death of another person under the influence of extreme emotional distress is a mitigating circumstance)(emphasis added); Shockley v. State, 565 A.2d 1373, 1383 (Del. 1989). In Petitioner's case, the Superior Court opined that counsel reasonably concluded to forego a mental

15

health defense given Petitioner's consistent refusal to admit
that he killed his stepmother. The Delaware Supreme Court
affirmed that decision, specifically concluding that "[t]he
record reflects that [Petitioner's] defense at trial was that
Coggin, and not he, had murdered his stepmother. The state of
[Petitioner's] mental health and the effect of the drugs and
alcohol he had ingested were simply not relevant to that defense.
There was no error on the part of [Petitioner's] counsel in that
respect." Hassett, 2005 WL 1653632, at *4.

Based on the record, the Court concludes that the Delaware
Supreme Court did not unreasonably apply Strickland in denying
these claims. The record demonstrates that counsel did, in fact,
contact a psychologist regarding possible mental health issues.
Additionally, during his trial, Petitioner denied killing his
stepmother, and testified that Jason Coggin killed her.[1]

---

[1]In his supporting memorandum, Petitioner contends that he
actually did admit his guilt at trial; he states that, when he
referred to "Jason" at trial, he was referring to "one of the
auditory hallucination personalities that [he] suffers from," and
not to his friend, Jason Coggin. (D.I. 3, at 8.) Petitioner
suggests that the state court (and presumably the jury and
everyone else) would not have reached this allegedly erroneous
assumption regarding the true identity of "Jason" if defense
counsel had a physician evaluate Petitioner prior to trial. The
Court concludes that Petitioner's vague, self-serving, and
unsupported contention that the "Jason" he referred to at trial
was one of his alternate "auditory hallucination personalities"
does not rebut the presumption of correctness applied to the
Superior Court's specific factual finding that Petitioner was not
suffering from any active mental illness symptoms during his
trial.

16

Accordingly, the Court will dismiss Petitioner claim regarding counsel's alleged failure to investigate Petitioner's mental health issues.

b. Failure To Investigate Witnesses

In his Rule 61 motion, Petitioner alleged that trial counsel failed to investigate several State witnesses and that he did not prepare to cross-examine those witnesses. In response to those allegations, trial counsel informed the Superior Court that he did not receive the list of prosecution witnesses until the trial began, and he did not receive their statements until the day the particular witness was scheduled to testify. Hassett, 2004 WL 2419139, at *6. The Superior Court then denied these claims after noting that Petitioner failed to sufficiently support his vague assertions regarding counsel's allegedly deficient investigation, stating that, "[w]ithout specifying how trial counsel's investigation was not reasonable and how the outcome of the trial would have been different had trial counsel conducted an otherwise reasonable investigation, the vague assertions fail." Id. The Delaware Supreme Court affirmed that decision because there was no evidence that counsel's alleged error caused prejudice to Petitioner. Hassett, 2005 WL 1653632, at *4.

It is well-settled that a petitioner has the burden of proving the facts in support of his ineffective assistance claim. Sistrunk v. Vaughn, 96 F.3d 666, 671 (3d Cir. 1996); Wells v.

17

<u>Petsock</u>, 941 F.2d 253, 259-260 (3d Cir. 1991). Moreover, in order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. <u>See</u> <u>Wells v. Petsock</u>, 941 F.2d 253, 259-260 (3d Cir. 1991); <u>Dooley</u> v. Petsock, 816 F.2d 885, 891-92 (3d Cir. 1987).

Here, the Court concludes that the Delaware Supreme Court did not unreasonably apply <u>Strickland</u> in denying the instant claims. Petitioner's Rule 61 motion only contained vague and conclusory statements regarding counsel's failure to investigate witnesses, and the motion did not provide concrete allegations of prejudice. Petitioner's habeas petition suffers from the same defect - he fails to demonstrate any actual prejudice resulting from the failure to investigate the State's witnesses. Accordingly, the Court will deny this claim because it does not warrant federal habeas relief under § 2254(d)(1).

### c. Failure To Present The Witness Who Saw Improper Contact Between Juror And Victim's Family Member

Petitioner alleges that he was prejudiced by trial counsel's failure to secure the witness who allegedly saw Juror No. 2 talking with a member of the victim's family. During Petitioner's trial, counsel informed the court that a woman (who turned out to be Petitioner's aunt) allegedly witnessed Juror No. 2 talking with a member of the victim's family. The Superior Court judge interviewed Juror No. 2 in chambers, and Juror No. 2

18

denied having spoken to anyone in the courthouse on that day or the previous day. The trial judge found Juror No. 2 to be credible, and did not disqualify her. The trial judge then informed defense counsel that he would reconsider the matter if the witness came forward under oath to say there had been an encounter. Counsel replied, "I'll talk with the person. I have her phone number at home and I'll call her. She may have simply been mistaken." (D.I. 71, State's Ans. Br. in Hassett v. State, No.468,2003, at B-70 to B-71.) The record does not contain any further information regarding this matter.

In his Rule 61 motion, Petitioner contended that counsel performed deficiently by not securing the witness to the alleged improper juror contact. The Superior Court denied this claim after determining that Petitioner did not establish the requisite prejudice under Strickland, specifically noting that Petitioner had access to the witness (his aunt), but that he did not submit any information to demonstrate that the she actually saw the contact between the juror and the victim's family. The Delaware Supreme Court affirmed the Superior Court's decision.

In his third claim alleging ineffective assistance of counsel, Petitioner contends that he was prejudiced by trial counsel's failure to secure the witness who allegedly saw Juror No. 2 talking with a member of the victim's family. The Court concludes that the Delaware Supreme Court's decision did not

19

involve an unreasonable application of Strickland. As in his
state post-conviction proceedings, Petitioner fails to
substantiate his claim that trial counsel did not interview his
aunt. Petitioner also fails to articulate the testimony his aunt
could have provided that would have resulted in a mistrial.
Given Petitioner's failure to provide concrete examples of
prejudice both at the state court level and here on habeas
review, the Court concludes that the Delaware Supreme Court's
decision did not involve an unreasonable application of
Strickland. Accordingly, the Court will dismiss the instant
claim for failing to satisfy § 2254(d)(1).

        d.   Trial Counsel Only Met With Petitioner Three Times

Finally, Petitioner contends that counsel provided
ineffective assistance by only meeting with Petitioner on three
occasions and by not fully discussing the facts of the case. The
Superior Court concluded that Petitioner's allegation was too
vague and denied this claim under Strickland's prejudice prong.
Specifically, the state court opined that Petitioner's refusal
to admit killing his stepmother constrained counsel to the single
defense that Coggin killed Petitioner's stepmother, and
therefore, any additional meetings between counsel and Petitioner
would not have suggested an alternative defense. The Delaware
Supreme Court affirmed that judgment.

"There is no established minimum number of meetings between

20

counsel and client prior to trial necessary to prepare an attorney to provide effective assistance of counsel." Moody v. Polk, 408 F.3d 141, 148 (4th Cir. 2005); Schwander v. Blackburn, 750 F.2d 494, 499-500 (5th Cir. 1985). Furthermore, Petitioner fails to show what additional evidence could have been produced if he and counsel had met for additional meetings, and he also fails to suggest any alternative defenses that may have resulted from any such meetings. Accordingly, the Court concludes that the Delaware Supreme Court did not unreasonably apply Strickland in denying the instant claim.

## D. **Procedurally Barred Claims**

Petitioner presented Claims Two, Four, and Six to the Delaware Superior Court in his Rule 61 motion, and the Superior Court denied the claims under Delaware Superior Court Rule 61(i)(3) as procedurally defaulted. State v. Hassett, 2003 WL 21999594 (Del. Super. Ct. Aug. 25, 2003). The Delaware Supreme Court affirmed the Superior Court's decision, and, for each separate claim, cited to Rule 61(i)(3) and stated that the Superior Court did not abuse its discretion in finding the claims to be procedurally barred.[2] Hassett v. State, 877 A.2d 52

---

[2]The Delaware Supreme Court also reviewed the merits of each of the three claims pursuant to Rule 61(i)(5) in order to determine if a miscarriage of justice occurred at trial such that the bar provided by Rule 61(i)(3) should not apply. Respondents imply that the Delaware Supreme Court's review of the merits for this purpose could be viewed as an alternate holding. (D.I. 18, at 4 n.2.) Even if the state supreme court's review of the

21

(Table), 2005 WL 1653632, at *2-*3 (Del. June 24, 2005).

This Court has consistently held that Rule 61 is an independent and adequate state procedural rule precluding federal habeas review. Mayfield v. Carroll, 2005 WL 2654283 (D. Del. Oct. 11, 2005); Carter v. Neal, 910 F. Supp. 143, 149-50 (D. Del. 1995). By denying Claims Two, Four, and Six under Rule 61(i)(3), the Delaware Supreme Court plainly stated that its decision rested on state law grounds. Thus, the Court is barred from reviewing the merits of these three claims absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claims are not reviewed.

Petitioner asserts counsel's failure to provide Petitioner with transcripts as cause for his default because the transcripts would have helped Petitioner to determine appropriate issues for appeal. (D.I. 22, at 2, 3, 5.) However, Petitioner never presented this or any other claim regarding appellate counsel's performance to the state courts, and further state court review of any such claim would now be barred by Rule 61(i)(2).[3] See

---

merits constitutes an alternate holding, the Court can still find the instant three claims procedurally barred because the Delaware Supreme Court explicitly invoked Rule 61(i)(3) as a separate basis for its decision. Johnson v. Pinchak, 392 F.3d 551, 558 (3d Cir. 2004); United States ex rel Caruso v. Zelinsky, 689 F.2d 435, 550 (3d Cir. 1982).

[3]Rule 61(i)(2) bars "[a]ny ground for relief that was not asserted in a prior postconviction proceeding."

22

Lawrie v. Snyder, 9 F. Supp. 2d 428, 453-54 (D. Del. 1998). As a result, Petitioner's allegation regarding appellate counsel's ineffective assistance is itself procedurally defaulted,[4] and a procedurally defaulted ineffective assistance of counsel claim cannot constitute cause for another procedurally defaulted claim. Edwards v. Carpenter, 529 U.S. 446, 453-54 (2000); Tome v. Stickman, 2006 WL 358771, at *4 (3d Cir. Feb. 16, 2006). Therefore, appellate counsel's performance cannot excuse Petitioner's procedural default of Claims Two, Four, and Six.

Petitioner also asserts mental illness as cause for his procedural default. As an initial matter, the Court notes that the Third Circuit has indicated that mental deficiency does not constitute cause for a procedural default. See Hull v. Freeman, 991 F.2d 86, 91 (3d Cir. 1993) (holding that mental retardation coupled with illiteracy is not "external" to the defense within the meaning of Murray v. Carrier, 477 U.S. 478 (1986)). It is unclear whether mental illness is considered to be a mental deficiency. Nevertheless, even if mental illness can constitute cause in certain circumstances, Petitioner has failed to demonstrate that he was actually suffering from a mental illness during the time period for filing an appeal, namely, May 16, 2002 through June 16, 2002. See Del. Sup. Ct. R. 6. In these

---

[4]Petitioner has not demonstrated any reason why the state courts would excuse the bar of Rule 61(i)(2). See Lawrie 9 F. Supp. 2d at 453-54.

23

circumstances, the Court concludes that Petitioner has failed to establish cause sufficient to excuse his procedural default.

In the absence of cause, the Court does not need to address the issue of prejudice. Moreover, the miscarriage of justice exception to the procedural default doctrine does not excuse Petitioner's default, because he has not provided new reliable evidence of his actual innocence. Accordingly, the Court will dismiss Claims Two, Four, and Six.

## IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. See Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 484 (2000). Additionally, if a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was

24

correct in its procedural ruling.  Id.

The Court has concluded that Petitioner's habeas claims do not warrant relief.  Reasonable jurists would not find this conclusion to be debatable.  Therefore, the Court declines to issue a certificate of appealability.

## V.  CONCLUSION

For the reasons discussed, Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 will be denied.

An appropriate Order will be entered.